No. 45,535

JEAN KECK SIPES and JUNE KECK RICE, d/b/a KECK TWINS BEAUTY SHOP, *Appellants*, v. LUCILLE S. CRUM, Individually, and as Administratrix of the Estate of Edwin E. Crum, Deceased, *Appellee.*

(464 P. 2d 1)

Opinion filed January 24, 1970.

*Kay McFarland,* of Topeka, argued the cause, and *George A. Scott, Jack A. Quinlan, T. M. Murrell,* and *John A. Bell,* all of Topeka, were with her on the brief for the appellants.

*Charles S. Arthur,* of Manhattan, argued the cause, and *Charles D. Green,* of Manhattan, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an action for reformation of a contract of sale of a beauty salon. Appeal is from the trial court's order sustaining defendant's motion for directed verdict made at the conclusion of plaintiffs' evidence.

Plaintiffs Jean Keck Sipes and June Keck Rice commenced the action by filing their petition March 12, 1965, naming as defendants Edwin E. Crum, his wife, Lucille S. Crum, and Heckel Bros., Inc., a corporation engaged in the wholesale beauty supply business.

Plaintiffs alleged that on January 2, 1962, they entered into a written contract with the Crums for the purchase of a business in Topeka known as Eddie's Beauty Salon, which business was then being operated by Edwin E. Crum. Plaintiffs attached a copy of the contract to their petition in which they alleged:

"IV.

"That defendant, Edwin E. Crum, represented to the plaintiffs at the time of the execution of the agreement and in the negotiations preceding said agreement that the amount to be paid under the terms of the contract, being $12,000.00, was the actual price paid by him, or its fair market value, for the personal property covered by the agreement."

Plaintiffs further alleged that Edwin E. Crum had great experience and superior knowledge to the plaintiffs of the value of the professional equipment covered by the contract; he had acted in the confidential relationship of friend and adviser in the operation of plaintiffs' business; Crum knew his representations as to cost to him of the equipment were false; he fraudulently concealed the fact the property conveyed by the contract was the subject of a prior recorded chattel mortgage which he had given to defendant Heckel Bros. Inc.; the items listed on the chattel mortgage were all the personalty covered by the sale contract, with the exception of about $175,000 worth of other items; the mortgage value of $6,209.94 represented the actual cost to Crum of the personalty conveyed by his contract of sale to plaintiffs, except other small items already referred to whose exact value was not known to plaintiffs. Plaintiffs prayed for reformation of the contract upon the basis of fraud "in order that plaintiffs would be liable only for the actual cost, or its fair market value, to defendant, Edwin C. Crum, of the personalty involved".

The sale contract provided that the property being sold was:

"The business known as EDDIE'S BEAUTY SALON, 109 A West 29th, Topeka, Kansas, together with the personal property on said premises pertaining to said business as listed on the attached Bill of Sale."

The contract further provided that plaintiffs were to pay the Crums as the purchase price the sum of $12,000 in monthly installments of at least $150.00 commencing March 1, 1962, the principal to bear interest at the rate of five per cent per annum; the premises being leased by the Crums from third parties, plaintiffs agreed to pay the rental specified in the lease to the lessors; the contract recited that under the lease the Crums could not assign their interest in

the lease but would remain personally liable thereon. The Crums agreed to obtain lessors' consent that plaintiffs might pay the specified lease rental directly to lessors so long as the Crums remained personally liable on the lease. The Crums further agreed to assign to plaintiffs their option to renew the lease. The contract further recited the Crums should at once execute to plaintiffs a bill of sale to the property sold under the contract and deposit it in escrow with certain named escrow agents in Manhattan, Kansas, to be delivered to plaintiffs upon their compliance with all terms of the contract.

Edwin C. Crum and his wife Lucille filed their answer May 14, 1965, in which they admitted execution of the contract as alleged but denied all other allegations. Mr. Crum died October 22, 1965, and his widow Lucille, as administratrix of his estate, was substituted in his place as a party defendant. Prior to trial Heckel Bros. Inc. was granted summary judgment. We are no longer concerned with it, no appeal having been taken from that order.

At trial plaintiffs offered four witnesses: A hairdresser who was manager for Eddie's Beauty Salon, a salesman for Heckel Bros. Inc., one of the landlords of the premises and plaintiff June Keck Rice. Their testimony revealed the following:

Plaintiffs, who are twin sisters, graduated in 1958 from high school at Manhattan, Kansas, at age eighteen. Both were on the school honor roll. Chuck Crum, a son to the Crums, was one of their classmates. Through him they became acquainted with Edwin C. Crum. Shortly after graduation they entered a cosmetology school in Manhattan operated by the Crums known as the Crum Beauty School, graduating from it later in 1958. They attended the school upon a deferred tuition plan which enabled them to pay for their schooling after they were regularly employed as hairdressers. June worked for Mrs. Crum while attending school. Both paid for their tuition after obtaining jobs. Jean first worked at a beauty shop at Great Bend, Kansas, while June worked at a shop in Manhattan owned by the Crums. Next both worked at Crosby Brothers shop and then at the Gage Beauty and Style Salon in Topeka. They borrowed money from the Crums with which to pay their apartment rent when they first came to Topeka. Later both leased a beauty salon on West Twelfth street in Topeka and operated it for about eighteen months under the name of Keck Twins Beauty Salon. Prior to this last venture they discussed the matter with Mr.

Crum and also with an employee of Heckel Bros. Altogether they worked in or operated beauty shops about three and one-half years before entering into the Crum contract.

Edwin C. Crum had commenced operating Eddie's Beauty Salon in Topeka in May, 1961. He had expected his son or some other relative to go into the business with him but this did not materialize. New operators with no following were employed. The shop was not making money but was doing better financially each week. The monthly rental on the shop was $400.00. Crum had purchased at wholesale prices from Heckel Bros. certain beauty equipment used in the shop. This equipment was that listed in the chattel mortgage to Heckel Bros. for which Crum paid $6,209.94. A beauty school operator receives a discount which a normal purchaser does not get.

Plaintiffs' lease on their West Twelfth street business was not going to be renewed. January 2, 1962, after some discussion, they entered into the sales contract with the Crums. Mr. Crum said he would let plaintiffs purchase the business for his cost plus certain other items. He listed upon a piece of paper items which went with the business. He stated his cost was $12,000. Plaintiffs did not read the sales agreement but simply signed it in the office of the escrow agent. Later on they got a copy of the agreement but never received a copy of the bill of sale referred to in the agreement. Plaintiffs commenced actual operation of the business February 2, 1962. Previously they had talked to Crum about business matters and they relied upon what he said. When they were nineteen years of age they decided to purchase an automobile but because of their age were unable to obtain credit. Mr. Crum cosigned their note for this purchase. Plaintiffs visited in the Crum home socially three or four times and attended social events with the Crums. Jean talked to Mr. Crum about her first marriage; he advised against it; Jean married despite this advice; five years later she was divorced and has since remarried.

Plaintiffs made the $150.00 payments until May 1, 1963, at which time upon Mr. Crum's request they increased the payments to $175.00 per month. After December, 1966, upon advice of counsel, they dropped back to $150.00. They had previously talked to their landlord about what they had paid for the business and he advised them to see a lawyer. They also discussed the price of the business with a salesman for the wholesale beauty supply company. At one of several pretrial conferences the parties stipulated that the cost

to the Crums of the items listed in the chattel mortgage was $6,209.94. The parties also stipulated the cost of certain other named items which were included in the sale was $1,135.00 but that the cost of plumbing, extra labor costs and supplies remained in dispute. The chattel mortgage was paid by the Crums and released of record prior to trial. Plaintiffs later paid Mr. Crum $200.00 for supplies.

As indicated, at the conclusion of plaintiffs' evidence, the trial court sustained defendant's motion for summary judgment, giving two reasons for its action: First, there had been no proof of the cost or value of several items of property covered by the sales contract, and second, there had been no clear and convincing evidence of fraud.

Upon appeal appellants present several contentions. They argue a confidential relationship existed between them and Mr. Crum which was breached by the latter in failing to make full disclosure. However, no cogent argument or authority is offered to support the assertion of confidential relationship and we are aware of none. The term "confidential or fiduciary relation" is a very broad one and courts generally have refrained from defining the particular instances of fiduciary relations in such a manner as to exclude other and perhaps new cases. Confidence alone is not enough to establish a fiduciary relationship (37 Am. Jur. 2d, Fraud and Deceit, § 16). In *Paul v. Smith,* 191 Kan. 163, 380 P. 2d 421, this court stated:

"It has been recognized that a fiduciary relationship between parties does not depend upon some technical relation created by, or defined in, law. It exists in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard for the interests of the one reposing the confidence.

"Fiduciary relationships recognized and enforceable in equity do not depend upon nomenclature; nor are they necessarily the product of any particular legal relationship. They may arise out of conduct of the parties evidencing an agreement to engage in a joint enterprise for the mutual benefit of the parties. But they necessarily spring from an attitude of trust and confidence and are based upon some form of agreement, either expressed or implied, from which it can be said the minds have met in a manner to create mutual obligations.

"For the plainest of reasons, agreements establishing fiduciary relationships, if not in writing, must be clear and convincing. Because of the acuteness of the equitable remedies, courts will not reach out to establish legal relationships from which enforceable equitable rights may flow. A confidential relationship is never presumed, and the burden of proof is upon the party asserting it.

"Mere concert of action, without more, does not establish a fiduciary

relationship. Undoubtedly, parties may deal at arm's length for their mutual profit. It is only when, by their concerted action, they willingly and knowingly act for one another in a manner to impose mutual trust and confidence that a fiduciary relationship arises." (Citations omitted.) (pp. 169-170.)

We would do no service in belaboring the evidence on the point. Suffice it to say, we think it insufficient to establish any confidential relationship between these parties.

Appellants argue that when cost was stated by Crum to be the selling price of the property being sold them Crum would have had the duty to disclose that cost even to a stranger and there would be fraud even if a stranger were involved. In their brief they state:

". . . it was indeed the intention of the parties that the contract in question was only for the major equipment and was not for the beauty shop as a completed, working unit."

We think the contention cannot prevail in the fact of the plain language in the contract that what was being bought and sold was:

"The business known as EDDIE's BEAUTY SALON, 109 A West 29th, Topeka, Kansas, together with the personal property on said premises pertaining to said business as listed on the attached Bill of Sale."

Moreover, there was nothing in the evidence to indicate any intention contrary to that clearly expressed in the contract.

Appellants further contend there was actually only a disputed area of $785.00 between the parties, this being arrived at as follows: $585.00 for necessary plumbing installed on the premises by the Crums and $200.00 for extra labor. The record does reveal proof in the form of the parties' stipulation of the cost or value of certain items up to $7,344.94 ($6,209.94 for items listed in the chattel mortgage and $1,135.00 for washer and dryer, drapes, clock, pole lamp, partition and outside sign), but it contains nothing by way either of evidence or stipulation beyond these items and nothing as to the value of any plumbing or extra labor. Appellee contends more was sold under the contract than those items mentioned by appellants—that in fact a going business was bargained for and received and there was nothing in the evidence from which a jury could have determined either the market value of that which appellants received in the total package or of its cost to the Crums, and hence there was no proof of false representation of any material fact. We are inclined to agree.

In their petition appellants pleaded that Crum represented the contract figure of $12,000 was the price paid by him, *or its fair*

*market value.* This allegation was never modified at any of several pretrial conferences and remained an issue upon which appellants went to trial. Actually there was no evidence from which it could be concluded appellants got less in value than that for which they bargained. Their dilemma may perhaps be demonstrated by certain colloquy between the court and counsel immediately before trial:

"THE COURT: In order for you to have recovery the jury's going to have to find that the agreement was to pay and buy this transferred personal property.

"MR. SCOTT: That's right.

"THE COURT: And pay the actual cost to him?

"MR. SCOTT: Right.

"THE COURT: And he represented it was $12,000.00 but the contract calls for certain personalty in a business, that's your problem?

"MR. ARTHUR: They say it's $6,200.00 and some dollars.

"THE COURT: I will instruct the jury, if you find that the agreement was between the plaintiff and defendant that they would pay to him the actual cost of this personalty, then the measure of damages would have been—

"MR. SCOTT: (Interrupting) You would have to give two instructions. If you find that the plaintiffs agreed to pay to the defendant $12,000.00 for their business which included the personalty then you must find for the defendant.

"THE COURT: That's right. In other words if they had an agreement which included more than the personalty you don't have any case.

"MR. SCOTT: We don't have a thing to hang our hat on.

"THE COURT: Now I am getting down to it. If they find—

"MR. SCOTT: (Interrupting) If they find that the agreement of the parties was to the effect that plaintiffs were to pay to the defendant the actual cost to the defendant then in that event there would be a difference—

"THE COURT: (Interrupting) But if they find the agreement was to pay the money for the personalty transferred as a going business you are out?

"MR. SCOTT: We are out. If there's good will in this thing we are through.

"MR. ARTHUR: That's the point I was trying to get across.

"MR. SCOTT: It's really a simple thing, you have got two stories, and if they find this contract covers more than the personal property they don't know what that value is, we don't have any case."

In *Todd v. Wichita Federal Savings & Loan Ass'n,* 184 Kan. 492, 337 P. 2d 648, this court capsuled the essential elements of fraud, stating:

"Where a plaintiff seeks to recover because of the fraud of the defendants, based upon false representations, it is incumbent upon him to allege and prove what representations were made, that they were false, that he believed them to be true, and that he relied and acted upon them to his detriment." (p. 494.)

And in *Hoch v. Hoch,* 187 Kan. 730, 359 P. 2d 839, this court commented on the proof requisite in a fraud action:

".  .  .  one who asserts fraud must prove it by a preponderance of the evidence;  .  .  .  such evidence should be clear, convincing and satisfactory, and  .  .  .  it does not devolve upon the party charged with committing the fraud to prove the transaction was honest and bona fide. Fraud is never presumed; it must be proved. Mere suspicion is not sufficient." (p. 732.)

Measured by the foregoing we are unable to see any clear and convincing evidence of false representation relied upon by appellants to their detriment.

As stated by the trial court in its ruling on the motion for directed verdict appellants offered proof only as to cost or value of part of the property involved in the contract. Appellants did not put into evidence the bill of sale. They say they never received a copy of it. Appellee counters with the statement appellants have never sought to secure the original, or a copy, and it remains with the escrow agents attached to the contract upon which appellants are still paying. Appellants have apparently ignored the bill of sale in an effort to limit the amount of property involved in the sale. Appellee points out further a going business was sold which included a lease with an option to renew, and, in addition to the plumbing, labor and other unspecified items, there was no evidence as to value of the business, the lease or the option to renew and hence no showing of false representation or that appellants have been damaged. Appellee also points out no down payment was required on the contract and the fact the Crums remained liable for any default in rental payments under the lease on the property, in effect underwriting appellants' purchase of a business. There simply was insufficient evidence to show misrepresentation as to cost or value of the property sold. Upon this element alone the fact finder would have been left to sheer speculation in order to support appellant's ultimate contentions, and the trial court properly directed a verdict against them.

Appellants emphasize the fact certain equipment was subject to a recorded chattel mortgage, but the mortgage having been paid and released prior to trial, it could be no impediment to completion of the escrow agreement and delivery of the bill of sale by the escrow agents to appellants when they become entitled to it.

We find no error in the judgment appealed from and it is affirmed.

APPROVED BY THE COURT.