INTER–AMERICAS INSURANCE
CORPORATION, INC., a Kansas
Corporation, Plaintiff,

v.

XYCOR SYSTEMS, INC., a Texas Corporation; Xycor, Inc., a California Corporation; Xycor, Inc., a de facto Corporation; Robert L. Reimers, James S. Kutzler, Stephen L. Calhoun, Shareholders of Xycor, Inc., a Dissolved Corporation; The Xycor, Inc. Shareholder's Liquidating Trust, Betty Sellers, Trustee, a California Corporation; Xycor Venture, Inc., a California Corporation; Systems Management, Inc., an Oklahoma Corporation, Defendants.

No. 88–1021–C.

United States District Court,
D. Kansas.

Feb. 25, 1991.

Charles W. Harris, Curfman, Harris, Stallings & Snow, Wichita, Kan., for plaintiff.

Richard E. Sparber, James Michael Zimmerman of Sparber, Ferguson, Naumann & Ponder, San Diego, Cal., for Xycor, Inc. and The Xycor Inc. Shareholder's Liquidating Trust, Betty Sellers, Trustee.

Gary M. Austerman, James M. Armstrong, Foulston & Siefkin, Wichita, Kan., Gordon Keckeissen, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, Cal., John E. Ponder, James Michael Zimmerman, Sparber, Ferguson, Naumann, Ponder & Ryan, San Diego, Cal., for Xycor Venture, Inc.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the following motions: defendant Xycor Venture, Inc.'s motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure (Dk. 48); defendants', Robert L. Reimers, James S. Kutzler and Stephen L. Calhoun, motion to dismiss for lack of personal jurisdiction (Dk. 51); defendants', Xycor, Inc., The Xycor Inc. Shareholders' Liquidating Trust, Robert L. Reimers, James S. Kutzler and Stephen L. Calhoun, motion to dismiss pursuant to Rule 12(b)(6) (Dk. 51); and the defendants', Xycor, Inc., The Xycor, Inc. Shareholders' Liquidating Trust, Robert L. Reimers, James S. Kutzler and Stephen L. Calhoun, motion for summary judgment pursuant to Rule 56 (Dk. 82). Oral argument would not materially assist the court in deciding these motions. The motions will be addressed *seriatim*.

### MOTIONS TO DISMISS PURSUANT TO RULE 12(b)(2)

■ To oppose successfully a pretrial motion to dismiss for lack of personal jurisdiction, the plaintiff must make a prima facie showing that statutory and due process requirements for exercising personal jurisdiction over defendants have been met. *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir.1984), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). Parties may submit affidavits and other documentary evidence for the court's consideration. *Thermal Insulation Systems v. Ark–Seal*

*Corp.*, 508 F.Supp. 434, 437 (D.Kan.1980). Allegations in the complaint are accepted as true to the extent they are uncontroverted by the affidavits. *Pytlik v. Professional Resources, Ltd.*, 887 F.2d 1371, 1376 (10th Cir.1989). When the jurisdictional allegations in the complaint are challenged by an appropriate pleading, the plaintiff has the duty to support them with competent proof of the supporting facts. *Id.* If the affidavits are conflicting, the factual disputes are resolved in favor of the plaintiff's prima facie case. *Behagen*, 744 F.2d at 733. Plaintiff is entitled to the benefit of any factual doubts. *Ammon v. Kaplow*, 468 F.Supp. 1304, 1309 (D.Kan.1979).

■ In a diversity case, the law of the forum is used to judge whether the prima facie showing has been made. *Yarbrough v. Elmer Bunker & Assocs.*, 669 F.2d 614, 616 (10th Cir.1982). Therefore, the court must address two questions. First, does the defendant's conduct come within one of the provisions of the Kansas long-arm statute? Second, does the exercise of jurisdiction comport with due process requirements? *Cal Caulfield and Co. v. Colonial Nursing Homes*, 642 F.Supp. 777, 779 (D.Kan.1986).

The defendants, Xycor Venture, Inc., Robert L. Reimers, James S. Kutzler and Stephen L. Calhoun, move to dismiss the claims against them for lack of personal jurisdiction. The plaintiff argues jurisdiction can be exercised over them under several long-arm provisions because of the conduct of Xycor, Inc. and the moving defendants' connections with that corporation. To prove the link with Xycor, Inc., the plaintiff proposes several theories; none of which provide a substantial basis for jurisdiction.

In August and September of 1985, the plaintiff, Inter–Americas Insurance Corporation, Inc. ("Inter–Americas"), purchased from defendant, Systems Management, Inc. (SMI), an Oklahoma corporation, a license to use a computer software system owned by SMI. The software is known as Credit Life and Health Insurance System, or "CLS System." The sale was consum-

mated in a written agreement between the parties. Among its terms was that SMI would service the CLS System as necessary.

Subsequently, in September of 1985, SMI sold its exclusive license to the CLS System to Xycor, Inc. ("XI"), a California corporation. By the terms of the sale agreement, XI assumed SMI's obligations to service the CLS System for plaintiff. XI later wrote plaintiff on September 25, 1985, informing it of this acquisition of rights. Personnel with XI were sent to Inter–Americas to begin installing the CLS System. In a letter dated December 2, 1985, XI told plaintiff that it was assuming the responsibility for performing the contract between Inter–Americas and SMI. Through February 17, 1986, XI sent invoices on the software to plaintiff, and payment was subsequently sent to XI.

On February 16, 1986, XI entered into an Asset Purchase Agreement with Xycor Systems, Inc. ("XSI"), a Texas corporation. By its terms, XI assigned to XSI, *inter alia,* the exclusive license agreement for the CLS System with SMI and the unrestricted right to use the name, "XYCOR." The agreement also provided that XSI would "assume all obligations under" the SMI and XI license agreement with Inter–Americas and would "have the exclusive right and benefit to provide current and renewal services...." XI assigned title to all fixed assets, furniture, equipment and software used in its Dallas office to XSI. Three XI employees, including Buz Allen, were hired by XSI. The parties also agreed that XSI would take over XI's post office box and telephone lines which had been used in operating XI's Dallas office. Finally, the agreement specified that XI would be "called upon to perform extensive marketing services for sales" of the CLS System for the benefit of XSI.

Plaintiff did not learn of this assignment between XI and XSI until July 7, 1987. Plaintiff received correspondence from the Dallas office over Xycor letterhead in March, June, and November of 1986. These letters were signed by David Dibrell.[1] Nevertheless, after February 1986, plaintiff actively dealt with XSI exclusively regarding the installation and service of the CLS System.

On December 30, 1986, nearly a year after XI's assignment to XSI, Xycor Venture, Inc. ("XVI"), another California corporation, purchased the assets of XI. The next day, XI entered into corporate dissolution, and its remaining assets were transferred into The Xycor, Inc. Shareholder's Liquidating Trust ("Trust"), including the right to receive payments from XVI. Defendants, Robert L. Reimers, James S. Kutzler and Stephen L. Calhoun, were the shareholders of XI at the time of its dissolution. The shareholders personally agreed to remain liable for XI's debts. Plaintiff has alleged that the shareholders constitute a de facto corporation.

The contacts between plaintiff and XVI are limited. In February 1987, plaintiff received the Winter issue of "Xy–Line," a newsletter for Xycor software clients. The newsletter began with an open letter to clients explaining that there had been a change in management and ownership in order to obtain more capital. The newsletter listed a San Diego mailing address for Xycor, Inc. Another contact is the exchange of correspondence in the summer of 1987. A copy of plaintiff's letter to Dave Dibrell in Texas, dated June 25, 1987, was also sent to XI at its California address. Plaintiff complained in the letter of continuing bugs and errors in the CLS System. XI of California wrote back in July of 1987 informing plaintiff that XSI in Dallas had sole responsibility for the CLS System because of the assignment in 1986. The last contact involves the plaintiff receiving in the mail a solicitation in April of 1988 from XI in California. As for general contacts with the forum, plaintiff says XI still advertises in trade journals to which the plaintiff subscribes. As to all of these

---

1. The plaintiff argues that XSI was holding itself out as XI during this period through the use of XI's letterhead. Plaintiff also insists that Dibrell told the Texas staff not to disclose the assignment. These points are not material to the plaintiff's theories of personal jurisdiction which could be applicable here.

contacts, plaintiff presumes they are actions taken by XVI in the name of XI.

The issues of personal jurisdiction raised here are unique and difficult. Much of this is due to the multiple corporate transactions, as set forth above, and due to the plaintiff's theories of extended liability. Plaintiff argues that XI remained secondarily liable to plaintiff after it assigned the plaintiff's contract to XSI and that XVI assumed this secondary liability of XI in purchasing its assets. Plaintiff argues the individual shareholders are liable under a California statute for the debts of the dissolved XI, and one of those debts is presumably XI's secondary liability as assignor to plaintiff. Building upon the secondary liability nexus between XI and the moving defendants, plaintiff seeks to attribute XI's contacts with the plaintiff and the forum to the moving defendants as the basis for personal jurisdiction.

To date, a Kansas court does not appear to have addressed what must be shown to acquire personal jurisdiction over a successor corporation that is liable for the predecessor corporation which has the only contacts with Kansas. The parent-subsidiary corporate relationship as the basis for long-arm jurisdiction has been considered in Kansas with the courts eschewing strict reliance on the alter ego doctrine in favor of balancing all contacts with forum. *Hoffman v. United Telecommunications, Inc.*, 575 F.Supp. 1463 (D.Kan.1983); *Energy Reserves Group, Inc. v. Superior Oil Co.*, 460 F.Supp. 483 (D.Kan.1978); *Securities Settlement Corp. v. Smith*, No. 86–1797–C (D.Kan. Nov. 14, 1987). The intercorporate relationship is "highly probative of the quality and nature of the non-resident's contact with the forum through an affiliated corporation." *Hoffman*, 575 F.Supp. at 1471. Nonetheless, the alter ego doctrine does not address "the reasonableness of requiring a litigant to answer in the forum." *Energy Reserves*, 460 F.Supp. at 508. These decisions suggest that in Kansas a liability theory, such as the alter ego doctrine, is not necessarily coextensive with the constitutional exercise of personal jurisdiction. See *Schlatter v. Mo–Comm Futures, Ltd.*, 233 Kan. 324, 337, 662 P.2d

553 (1983) (in personam jurisdiction must exist before statutory liability can be sought).

Other jurisdictions seemingly have equated liability with jurisdiction when the defendant is a successor corporation. A leading commentator has observed:

> Related to the question of imputing the contacts of corporations in the same corporate family to the defendant to gain long-arm jurisdiction is the matter of imputing the contacts of a predecessor to a successor corporation. The basic test seems to gear the jurisdiction question to whether, as a substantive matter, the successor corporation may be liable for the obligations of the predecessor. The mere fact that a corporation acquires all the assets of another does not necessarily mean it will be liable for the obligations of its predecessor. If it is liable for the predecessor's obligations, however, it will be subject to long-arm jurisdiction in a suit to enforce the obligation if the predecessor would have been subject to such jurisdiction. A California case has upheld jurisdiction in a product liability suit against a successor corporation to the one that manufactured the allegedly defective product, even though the successor specifically did not assume the predecessor's product liabilities.
>
> A corporation that succeeds to the business of a partnership or single proprietorship may likewise be subject to long-arm jurisdiction for actions arising from the activity of the predecessor if the corporation assumed liability for the predecessor's obligations.

R. Casad, *Jurisdiction in Civil Actions* ¶ 4.03[5][d] (1983) (footnotes omitted). The expressed rationale for this general rule is to prevent a corporation from fleeing the jurisdiction and changing its name to avoid long-arm jurisdiction. *City of Richmond, Va. v. Madison Management Group*, 918 F.2d 438, 454–55 (4th Cir.1990); *Duris v. Erato Shipping, Inc.*, 684 F.2d 352, 356 (6th Cir.1982) ("Any other ruling would allow corporations to immunize themselves by formalistically changing their titles."), *aff'd, Pallas Shipping Agency, Ltd. v. Du-*

*ris,* 461 U.S. 529, 103 S.Ct. 1991, 76 L.Ed.2d 120 (1983); *Mesiti v. Microdot, Inc.,* 739 F.Supp. 57, 60 (D.N.H.1990); *Bowers v. NETI Technologies, Inc.,* 690 F.Supp. 349, 361 (E.D.Pa.1988). Though the plaintiff makes this argument here, it cites case law for support that is not on all fours with facts of this case.[2]

■ In Kansas, the successor corporation who acquires all assets of the prior corporation does not also become liable for its debts and liabilities except:

(1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporation; (3) where the purchasing corporation is merely a continuation of the selling corporation; or (4) where the transaction is entered into fraudulently in order to escape liability for such debts.

*Comstock v. Great Lakes Distributing Co.,* 209 Kan. 306, Syl. ¶ 1, 496 P.2d 1308 (1972). Following other courts, it would be appropriate in Kansas to exercise personal jurisdiction over a successor corporation where liability under any of the above four circumstances is also shown. " [T]he wholesomeness of that rule is apparent on its face.' " *City of Richmond, V.A.,* 918 F.2d at 455 (quoting the district court order on appeal). A corporation should not be able to escape liability by converting into a new shell and operating in a different forum. Even though this is a compelling rationale for adopting under state long-arm law the general rule of exercising jurisdiction over the non-resident successor whenever liability could also exist, the court must still take the second step of addressing due process. See, e.g., *Mesiti v. Microdot, Inc.,* 739 F.Supp. at 60–61; *Homestead Sav. v. Ozark Financial Corp.,* 699 F.Supp. 1547, 1550–51 (S.D.Fla.1988); *Koch Supplies, Inc. v. Charles Needham Indus-*

*tries,* No. 86–1330–CV–W–9–6, 1990 WL 274485 (W.D.Mo. Nov. 14, 1990) (1990 U.S. Dist. LEXIS 15707).

■ A court may acquire general or specific jurisdiction over corporations. General jurisdiction is "based on the defendant's presence or accumulated contacts with the forum." *Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1418 (10th Cir. 1988). In the absence of general jurisdiction, specific jurisdiction may exist "arising out of or related to the defendant's contacts with the forum state." *Id.* Plaintiff does not allege that XVI had such continuous or systematic contacts with Kansas which would permit the exercise of general jurisdiction. Occasional mail solicitations alone are not continuous or systematic contacts. The court will analyze the case under specific jurisdiction principles.

Due process is served when "minimum contacts" between the non-resident defendant and the forum exist so as to "not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). This doctrine can be broken down into a three-prong test:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2) The claim must be one which arises out of or results from the defendant's forum-related activities.

(3) Exercise of jurisdiction must be reasonable.

---

**2.** In the case of *Minnesota Min. & Mfg. Co. v. Eco Chem. Inc.,* 757 F.2d 1256 (Fed.Cir.1985), the court obtained personal jurisdiction over the corporation when it was transferred the assets of the prior corporate defendant while the suit was pending. The court was concerned with the substitution of parties pursuant to Fed.R. Civ.P. 25 and simply followed the established rule of having jurisdiction over the substituted defendant if jurisdiction had been properly obtained over the prior defendant. See *Explosives Corp. of America v. Garlam Ent. Corp.,* 817 F.2d 894, 906 (1st Cir.), *cert. denied,* 484 U.S. 925, 108 S.Ct. 286, 287, 98 L.Ed.2d 247 (1987). The relevant transfer or assumption of rights and obligations between XI and XVI occurred before the plaintiff ever filed this case.

*Taylor v. Phelan*, 912 F.2d 429, 432 (10th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991) (quoting *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1419 n. 6 (10th Cir.1988) [quoting *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1287 (9th Cir.1977) ] ).

■ The purposeful availment requirement has a dual role. "[I]t identifies acts that a defendant would reasonably expect to subject her to jurisdiction in the particular forum[, and] it ensures that only the *defendant's* acts directed at the forum establish jurisdiction." *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir.1990) (emphasis in original). This requirement effectively prevents a defendant from being haled into a jurisdiction "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The contacts must amount to a "substantial connection." *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). This gives the defendant "fair warning" that his or her action may bring them under the jurisdiction of the foreign forum. *Burger King Corp.*, 471 U.S. at 472–473, 105 S.Ct. at 2181–2182.

■ Personal jurisdiction may be properly exercised over a nonresident who " 'purposefully directs' his activities toward forum residents." *Id.* at 473, 105 S.Ct. at 2182. The rationale behind this extension of jurisdiction is also stated in *Burger King*, as follows:

A State generally has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.... Moreover, where individuals "purposefully derive benefit" from their interstate activities, ..., it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid

interstate obligations that have been voluntarily assumed. And because "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity," it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity....

471 U.S. at 473–74, 105 S.Ct. at 2182–2183. Where a defendant purposefully directs his actions towards a forum or purposefully avails himself of benefits from that forum, he should reasonably anticipate being haled into that forum's court. In regards to contractual relations between citizens of different states, the Supreme Court has "emphasized that parties who 'reach out beyond .ne state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other state for the consequences of their activities." 471 U.S. at 473, 105 S.Ct. at 2182 (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950) and citing *McGee v. International Life Insurance Co.*, 355 U.S. at 222–23, 78 S.Ct. at 201.)

■ Once purposeful minimum contacts with the forum have been found, the court then scrutinizes the contacts under other factors to determine if jurisdiction would be consistent with notions of "fair play and substantial justice." *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *International Shoe*, 326 U.S. at 320, 66 S.Ct. at 160). This reasonableness inquiry consists of several factors, including:

"The burden on the defendant," "the forum state's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental social policies." *World-Wide Volkswagen Corp. v. Wooden*, 444 U.S. [286] at 292 [, 100 S.Ct. 559 at 564, 62 L.Ed.2d 490 (1980) ].

*Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183.

Neither XVI nor the shareholders have purposefully established minimum contacts to Kansas. Among the liabilities allegedly assumed by these defendants was the secondary liability on plaintiff's contract. This secondary liability was not mentioned in the contract between XI and XVI. The court finds that this secondary liability, as a contact, to be too attenuated for one to reasonably expect being subject to Kansas jurisdiction. XVI was not fairly warned that as a result of acquiring XI's remaining assets and liabilities that it would be subject to suit in every forum where XI may have had a service contract even though the same contracts had been transferred to XSI nearly a year before XVI's acquisition. Such secondary liability falls short of the "substantial connection" necessary to satisfy due process. The moving defendants have not purposefully availed themselves of the privilege of doing business in Kansas nor purposefully directed their activities to forum residents. Advertisements in national journals and nationwide mailings do not secure a contact with each recipient forum sufficient to sustain personal jurisdiction. The July 1987 letter from XVI to plaintiff was sent in response to the plaintiff complaining of XSI's performance under the contract. This single letter informing plaintiff that complaints should continue to be directed to XSI does not establish XVI purposefully availed itself of business in Kansas.

The contacts of the defendant shareholders are even more remote. Plaintiff can point to no actions by them that were not performed in their official capacity. There is no allegation or facts showing that the shareholders knowingly committed tortious acts against plaintiff. Their economic stake in XI and XVI are not "minimum contacts." The motions to dismiss for lack of personal jurisdiction are granted.

### MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

In deciding a motion to dismiss, the court must accept as true on their face the well-pleaded factual allegations of the complaint, and all reasonable inferences are made in favor of the plaintiffs. *Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir.1987). Allegations must be construed most favorably for the plaintiffs. *Huxall v. First State Bank,* 842 F.2d 249, 251 (10th Cir. 1988). Dismissal is appropriate only if it appears beyond a reasonable doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The sufficiency of the complaint is not assessed from whether the plaintiffs may ultimately prevail but from whether plaintiffs are entitled to present evidence in support of their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Dismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line,* 873 F.2d 1357, 1359 (10th Cir. 1989).

This motion is brought by the defendants, Xycor Inc. ("XI"), a California corporation, and Xycor Inc. Shareholders' Liquidating Trust ("Trust"), collectively termed the "California defendants." The moving defendants first argue the plaintiff's breach of contract claim is deficient as it fails to plead a contract between the parties and a breach of the same. The court finds that the complaint clearly pleads that a contract existed between plaintiff and XI which was breached and that the Trust assumed liability for that breach.

Plaintiff's fraud claim is not a model pleading. Little effort is made to separate out the allegations of fraud concerning the three corporate defendants— XI, XSI, and SMI. At this stage in the proceedings, however, the purpose of Rule 9(b) has been served as the same California defendants have already moved for summary judgment on the fraud claim.

In paragraph thirty-five of its complaint, plaintiff seeks reformation of the contract between it and SMI, deleting the clause that SMI did not assume the risk or finan-

cial consequences arising out of the use of the software and also deleting the warranty disclaimer clause and another clause disclaiming any relief for consequential, incidental, indirect, or special damages of any kind. Plaintiff believes this relief is available since SMI, knowing it was untrue, fraudulently represented in the contract its belief that the "software being furnished hereunder is accurate and reliable." Defendants contend reformation is inappropriate because any fraud occurred either before or during the antecedent oral agreement or after the written agreement was executed. Plaintiff responds that SMI's failure to disclose that the software was incomplete and unreliable constitutes fraud entitling it to reformation.

■ "Reformation is an ancient remedy used to reframe a written contract to reflect accurately the real agreement between the contracting parties when, either through mutual mistake or unilateral mistake coupled with actual or equitable fraud by the other party, the writing does not embody the contract as actually made." *Mutual of Omaha Insurance Company v. Russell,* 402 F.2d 339, 344 (10th Cir.1968), *cert. denied,* 394 U.S. 973, 89 S.Ct. 1456, 22 L.Ed.2d 753 (1969); see also *Andres v. Claassen,* 238 Kan. 732, 740, 714 P.2d 963 (1986). Where as a result of mistake by one party induced by the fraud of the other party, something is missing from or added to the written contract, the writing will be reformed in accordance with the true agreement. *Jones v. Crowell,* 164 Kan. 261, 264, 188 P.2d 908 (1948); *Funkhouser Equipment Co. v. Carroll,* 161 Kan. 428, 433, 168 P.2d 918 (1946). Reformation is not to be used "to make a new instrument nor to supply terms upon which the minds of the parties have not met." *Jones,* 164 Kan. at 264, 188 P.2d 908 (quoting *Waddle v. Bird,* 122 Kan. 716, Syl. ¶ 1, 253 Pac. 576 (1927)); see also *Anco Constr. Co. v. City of Wichita,* 233 Kan. 132, 135, 660 P.2d 560 (1983).

Kansas courts have entertained the use of reformation where a party mistakenly enters into a written contract on certain terms because of the other party's misrep-resentation of material fact. See, e.g., *Monarch Ins. Co. of Ohio v. Lankard,* 715 F.Supp. 304 (D.Kan.1989); *Sipes v. Crum,* 204 Kan. 591, 464 P.2d 1 (1970). In *Monarch,* the plaintiff insurer sought to have the insurance contract reformed to include the defendant's wife as an insured thereby relieving plaintiff of its duty to defend or indemnify the defendant against the suit brought by his wife. The defendant misrepresented in the application and policy that he was the sole owner of the aircraft when in fact his wife was a co-owner. Had the defendant disclosed this material fact, the plaintiff's underwriting guidelines would have required the listing of the wife as a co-insured and, therefore, subject to the Non–Cross Liability Endorsement. Judge Saffels reformed the contract after finding that plaintiff had shown the elements of a fraudulent representation. Judge Saffels found that the insurer relied on the representation because it had not listed the defendant's wife as a co-insured even though the underwriting guidelines required otherwise. 715 F.Supp. at 306.

■ Based on Kansas precedent, the plaintiff has alleged a claim for reformation. Plaintiff insists it would not have agreed to the limitation of remedy or disclaimer clauses if SMI had disclosed that the CLS system was inaccurate and unreliable. Defendants' motion to dismiss the reformation claim is denied.

## MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

A motion for summary judgment gives the judge an initial opportunity to assess the need for a trial. Without weighing the evidence or determining credibility, the court grants summary judgment when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at

2510. An issue of fact is "material" if proof of it might affect the outcome of the lawsuit. 477 U.S. at 249, 106 S.Ct. at 2510. Factual inferences are drawn to favor the existence of triable issues, and where reasonable minds could ultimately reach different conclusions, summary judgment is inappropriate. *See Riley v. Brown & Root, Inc.*, 896 F.2d 474, 476–77 (10th Cir.1990).

The movant's initial burden under Fed.R. Civ.P. 56 is to show the absence of evidence to support the nonmoving party's case. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 345 (10th Cir. 1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). The movant must specify those portions of " 'the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits if any,' " which demonstrate the absence of a genuine issue of fact. *Windon*, 805 F.2d at 345 (quoting Fed.R.Civ.P. 56(c)). It may be sufficient for the movant to establish that the alleged factual issues are without legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts supported by the kinds of evidentiary materials listed in Rule 56(c). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. The evidence is deemed true and all reasonable inferences are drawn in his favor. *Windon*, 805 F.2d at 346. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

Most of defendants' motion is riddled with genuine issues of material fact. Plaintiff has come forth with specific facts that controvert the defendants' statement of facts. Defendants' motion on the plaintiff's breach of contract claim and fraud claim is summarily denied.

Defendants argue the integration clause in the SMI contract precludes plaintiff from obtaining any relief for fraudulent representations made during negotiations. "A well-recognized exception to the parol evidence rule permits the use of evidence of fraudulent representations made during the course of negotiations where a contract is procured or induced by the fraudulent representations of one of the parties which were relied upon by the other." *Hawthorn–Mellody, Inc. v. Driessen*, 213 Kan. 791, 795, 518 P.2d 446 (1974) (citing *Culp v. Bloss*, 203 Kan. 714, 457 P.2d 154 (1969)). Defendants' argument is without merit.

Defendants repeat the arguments advanced in their motion to dismiss the plaintiff's reformation claim. The court denies them for the same reasons.

Citing *Transamerica Oil Corporation v. Lynes, Inc.*, 723 F.2d 758, 764 (10th Cir. 1983), and *Delhomme Industries, Inc. v. Houston Beechcraft Inc.*, 669 F.2d 1049, 1061–62 (5th Cir.1982), defendants argue the plaintiff's claims for breach of warranty and asserted remedies are subject to the exculpatory clauses in the written contract. Plaintiff aptly notes that the warranty disclaimer only affects the warranties not set forth in the agreement. Plaintiff next raises some points not advanced by the defendants in their motion, such as the proper construction of the limitation of remedy clause and its applicability to the fraud claim. The court will not address either point until they became issues of contention. Finally, the plaintiff insists the exclusion of consequential damages may be unconscionable under K.S.A. 84–2–719(3) since SMI may have fraudulently misrepresented the quality of the goods. Defendants did not reply to this argument. This remains an issue.

IT IS THEREFORE ORDERED that defendant Xycor Venture, Inc.'s motion to dismiss for lack of personal jurisdiction (Dk. 48) is granted;

IT IS FURTHER ORDERED that defendants', Robert L. Reimers, James S. Kutzler and Stephen L. Calhoun, motion to dismiss for lack of personal jurisdiction (Dk. 51) is granted;

IT IS FURTHER ORDERED that defendants', Xycor, Inc. and the Xycor Inc. Shareholders' Liquidating Trust, motions to dismiss (Dk. 51) and for summary judgment (Dk. 82) are denied.