The **STATE OF IDAHO** and Governor Cecil D. Andrus in his capacity as Trustee of Natural Resources, Plaintiffs,

v.

The M.A. HANNA COMPANY, formerly The Hanna Mining Company; Hanna Services Company; Noranda Mining Inc., and Noranda Exploration, Inc., Defendants.

The M.A. HANNA COMPANY, formerly The Hanna Mining Company; Hanna Services Company; Noranda Mining, Inc., and Noranda Exploration, Inc., Third–Party Plaintiffs,

v.

ALUMET CORPORATION; Alumet Holding Corporation; Calera Mining Company; Alumax, Inc.; Misco P.C., Inc.; Howe Sound Company; Pechiney Corporation; Union Carbide Chemicals and Plastics Corporation; The United States of America; The United States Geological Survey; The United States Bureau of Mines; The United States Forest Service; United States Department of Agriculture; United States General Services Administration; Defense Minerals Exploration Administration; Office of Mineral Exploration; Defense Minerals Administration; Defense Materials Procurement Agency; Clayton F. Yeutter, Secretary of Agriculture; F. Dale Robertson, Chief of the United States Forest Service; The United States Department

of Interior; Dallas Lynn Peck, Director of the United States Geological Survey; T.S. Ary, Director of the United States Bureau of Mines; and Richard G. Austin, Director of the General Services Administration, Third–Party Defendants.

No. 83–4179–E–EJL.

United States District Court,
D. Idaho.

March 19, 1993.

Order Denying Reconsideration
May 23, 1993.

Don Olowinski, Richard Burleigh, Hawley, Troxell, Ennis & Hawley, Boise, ID, for Hanna Min. Co.

Thomas W. Stoeyer, Jr., Theodore Garrett, Covington & Burling, Washington, DC, for Howmet Corp.

Richie D. Haddock, L.R. Curtis, Jr., Brent Manning, Holme, Roberts & Owen, Salt Lake City, UT, Jeffrey Fereday, Givens, Pursley, Webb & Huntley, Boise, ID, for Union Carbide C & P Co.

Carl Burke, William Russell, Elam, Burke & Boyd, Boise, ID, for Pechiney Corp. and Howmet Corp.

Scott D. Hess, Warren E. Jones, Eberle, Berlin, Kading, Turnbow & McKiveen, Boise, ID, for Howe Sound Co., Alumax, Inc., Misco P.C., Inc., Calera Mining Co., and Howmet Corp.

Maurice Ellsworth, U.S. Atty., Boise, ID, for the U.S.

Larry Echohawk, Clive Strong, Atty. Gen., Boise, ID, for the State of Idaho.

Anthony O. Garvin, Brobeck, Phleger & Harrison, Bruce W. Laidlaw, Landels, Ripley & Diamond, San Francisco, CA, Roy L. Eiguren, Gary Allen, Hugh O'Riordan, Davis, Wright & Tremaine, Boise, ID, for Noranda Mining, Inc. and Noranda Exploration, Inc.

Wesley Merrill, N. Randy Smith, Merrill & Merrill, Pocatello, ID, for Hanna Mining Co.

## ORDER

LODGE, Chief Judge.

On September 28, 1992, United States Magistrate Judge Larry M. Boyle issued his report and recommendation in this matter. Pursuant to 28 U.S.C. § 636(b)(1), the parties had ten days in which to file written objections to the report and recommendation. Objections to the report and recommendation were filed by third party plaintiffs and defendants. Therefore, this court must conduct a *de novo* review of the record, and under 28 U.S.C. § 636(b)(1), may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge.

## I. BACKGROUND

This federal action commenced in 1983 when the state of Idaho brought suit against M.A. Hanna Co. and Noranda Mining, Inc. raising claims under the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9601 (CERCLA) and Idaho statutes and common law. The complaint alleged environmental damage from mining activities at the Blackbird Mine in Lemhi County, Idaho. The damage is alleged to include three million tons of tailings and waste rock and ten miles of underground workings.

In 1990, Hanna and Noranda filed third party complaints against three other defendants: (1) Alumet Corporation, (2) Alumax, Inc., and (3) Pechiney Corporation, seeking monetary relief including contribution for the recovery of response costs under CERCLA. At issue before Magistrate Judge Boyle were motions to dismiss by these third party defendants—Alumet, Alumax, and Pechiney—all nonresident corporations which assert lack of personal jurisdiction and inadequate service.

In a lengthy and very well researched report and recommendation, Judge Boyle determined that for a federal court to properly exercise personal jurisdiction over these out of state defendants, Idaho's long arm statute must be satisfied. Additionally, the exercise of personal jurisdiction must also comply with due process.

After an extensive review of the facts and law, Judge Boyle recommended that Alumet's motion to dismiss should be denied because the business transactions of Alumet's predecessor corporation, Howmet (previously Howe Sound), should be imputed to Alumet, thus bringing Alumet within the personal jurisdiction of the state. Judge Boyle determined that a corporation such as Alumet could anticipate being called upon to

litigate in a forum from which its predecessor derived significant benefits.

As to Alumax, Judge Boyle determined that its motion to dismiss should be granted. Judge Boyle considered that the holding company which is Alumax was not sufficiently connected to Alumet for jurisdiction to be imputed. Judge Boyle also concluded that the business activities in Idaho of an Alumax subsidiary, Alumax Fabricated Products, are not substantially connected to the cause of action in this case and thus do not justify asserting personal jurisdiction over Alumax in this action.

Finally, Judge Boyle also determined that Pechiney's motion to dismiss should be granted because the sole connection Pechiney (who has never maintained an office in Idaho, never manufactured nor sold any products in Idaho, never solicited any business in Idaho nor had any Idaho employees or agents) has to this case stems from a 1983 assumption agreement between Pechiney and Howmet, the successor to Howe Sound. Judge Boyle noted that at the time of this assumption agreement, all of Howe Sound's Blackbird Mine assets had been disposed of, and the agreement made no mention of the Blackbird Mine nor any residual liability. Judge Boyle therefore concluded that Pechiney had not purposely established the requisite minimum contacts with Idaho to justify the court exercising jurisdiction over this defendant.

Hanna and Noranda and Alumet have filed objections to Judge Boyle's findings and recommendations. Before considering these objections, however, the court will first consider an additional motion filed by Hanna and Noranda shortly after the report and recommendation was issued.

## II. MOTION TO STAY

As noted above, the issue raised by the motions considered by Judge Boyle involved this court's exercise of personal jurisdiction over out of state defendants. On October 9, 1992, shortly after Judge Boyle's recommendation was issued, Hanna and Noranda filed a motion to stay the jurisdictional proceedings in this action, contending that material new facts had arisen which would compel a stay. Specifically, Hanna and Noranda asserted that a Notice of Intent to File Suit by the United States Government had been filed in this action. Hanna and Noranda state that the United States will sue Hanna, Noranda, Alumax, Alumet and Pechiney under CERCLA. Hanna and Noranda contend that because claims by the United States under CERCLA are allowed nationwide service of process, this court will have a new and independent basis for personal jurisdiction over all defendants, without needing to consider the law presented to Judge Boyle.

Pechiney and Alumet have opposed the request for a stay. First, they note that a notice of intent to file suit is not the same as a suit, and there is no indication when the United States may file its action in this matter. Second, they contend that while actions initiated by the United States may be allowed nationwide service of process under CERCLA, this action was not filed by the United States, and nowhere does the statute indicate that Noranda and Hanna may take advantage of this provision.

The record before the court indicates that Hanna and Noranda's assertion that the United States government's notice of intent to sue is a material new fact not available to Judge Boyle is not very well taken. In the court record are notices to Hanna and Noranda, dated June 8, 1992, informing them that the United States shortly intended to file suit regarding the Blackbird Mine. (This was followed by the notice to the court filed on September 28, 1992.) If Hanna and Noranda thought the United States government's statement of intent to sue so jurisdictionally significant, they could have brought this information to the attention of Judge Boyle any time after they received the statements from the United States, rather than waiting until his report and recommendation had been issued.

Further, the United States has been a third party defendant to this action for a number of years, and it strains credulity to believe that Hanna and Noranda were surprised by the notice of intent filed in this action.

Finally, the court cannot agree that the additional service provisions allowed to the United States under CERCLA should replace Judge Boyle's analysis. The basic objective of CERCLA is the prompt, thorough, and cost effective cleanup of the nation's hazardous waste sites. Perhaps Congress' primary objective in the 1986 amendments to CERCLA was to significantly accelerate the cleanup of the nation's hazardous waste sites.

However, basic constitutional and civil procedure principles govern the scope of personal jurisdiction in a section 107 action under CERCLA. *See State of Idaho v. Bunker Hill Co.*, 635 F.Supp. 665, 670 (D.Idaho 1986) ("The court must find that in relying upon the established contacts, traditional notions of fair play and substantial justice would not be offended by subjecting the nonresident defendant to the forum court's jurisdiction."). Nothing in the amended section 113 changes this. Although CERCLA now provides for nationwide service of process in a suit by the United States, this does not mean that a court can or should constitutionally exercise personal jurisdiction where such jurisdiction would offend due process and "traditional notions of fair play and substantial justice."

The cases reviewed by the court clearly establish that, in environmental as well as in other cases, personal jurisdiction depends on a "minimum contacts" analysis derived first from the law of the state and analysis of the state's long arm statute, and second from the constitutional protection of the Fourteenth Amendment. Merely allowing nationwide service of process does not overcome the necessity for due process.

Therefore, Hanna and Noranda's motion for a stay will be denied. The court will next examine the objections to Judge Boyle's recommendation.

### III. OBJECTIONS

### A. ALUMET'S OBJECTIONS

Alumet has filed a motion for reconsideration, objecting to Judge Boyle's recommendation that Alumet's motion to dismiss should be denied because the business transactions of Alumet's predecessor corporation, Howmet (previously Howe Sound), should be imputed to Alumet, thus bringing Alumet within the personal jurisdiction of the state. Judge Boyle determined that a corporation such as Alumet could anticipate being called upon to litigate in a forum from which its predecessor derived significant benefits.

As a factual finding, Judge Boyle determined that Alumet is the successor corporation to Howe Sound. In 1943, a Howe Sound employee staked claims and conducted exploration at the Blackbird Mine site, and in 1944, a wholly owned subsidiary company of Howe Sound, Calera Mining Company, took title to the Blackbird Mine and produced cobalt at the mine until 1959. Judge Boyle determined that the Howe Sound activities in 1943 qualified as "transacting business" in the state of Idaho, justifying jurisdiction over Howe Sound. Since Alumet is the current corporate incarnation of Howe Sound, Judge Boyle concluded the forum contacts of Alumet's predecessor should be imputed to Alumet for the purpose of exercising personal jurisdiction. Judge Boyle further concluded that such a determination comported with due process concerns as well, in that a corporation such as Alumet could reasonably expect future litigation in a forum from which its predecessor had derived significant benefits.

Alumet contends, however, that considerations of due process should bar this court's jurisdiction over it. Alumet notes that it has never conducted any business in Idaho, and the activities of its predecessor corporation, Howe Sound, should not be imputed to it. Alumet contends that under the Ninth Circuit standard set forth in *Alexander v. Circus Circus Enterprises*, 939 F.2d 847, 850 (9th Cir.1991), Judge Boyle misapplied the due process standard. The court cannot agree. The court has reviewed this case, and notes that the only contact with the forum state by the defendants in *Alexander* occurred through their advertising tourist destinations in Nevada. That is very different from the facts at issue here, where Howe Sound, Alumet's prior incarnation, was directly connected to the cobalt mining activities at Blackbird Mine.

Alumet further contends that it should not be deemed sufficiently related to Howe Sound to be liable for Howe Sound's (and its' subsidiaries) actions in Idaho. Alumet asserts that, like Pechiney, it did not take on the liabilities of Howe Sound when it underwent statutory mergers. The court has reviewed Judge Boyle's findings on this matter, and finds them supported in fact and law.

After full consideration, the court believes the analysis undertaken by Judge Boyle on this issue was proper and will not be disturbed. The court believes, after conducting a *de novo* review of the jurisdictional case law, that Judge Boyle's conclusion as to this defendant supported by law and will be adopted by this court.

## B. HANNA AND NORANDA'S OBJECTIONS

### 1. Alumax

Noranda and Hanna have filed objections to Judge Boyle's determination that the holding company, Alumax, was not sufficiently connected to Alumet's business in Idaho for jurisdiction to be imputed, and his conclusion that the business activities in Idaho of another of Alumax's subsidiaries, Alumax Fabricated Products, are not sufficiently connected to the cause of action in this case to justify asserting personal jurisdiction over Alumax in this action.

Judge Boyle found that Fabricated manufactures aluminum products in Boise and has never had any involvement or connection with the Blackbird Mine. Alumax is a holding company.

Hanna and Noranda assert that they presented overwhelming evidence that the holding company Alumax has an alter ego relationship with Alumax Fabricated, and contends that this alter ego relationship justifies this court's "general" jurisdiction over Alumax, regardless of whether the contacts with the forum states are substantially connected to the cause of action. This argument was presented to Judge Boyle, and rejected by him.

■ The court considered these issues in its *de novo* review of the issues here and the jurisdictional case law. In *Helicopteros Na-*

*cionales de Colombia v. Hall,* 466 U.S. 408, 414 nn. 8, 9, 104 S.Ct. 1868, 1872 nn. 8, 9, 80 L.Ed.2d 404 (1984), the United States Supreme Court recognized the theories of "general jurisdiction" and "special jurisdiction." When the cause of action sued on does not arise from the defendants' contacts with the forum state, *general* jurisdiction must be predicated on contacts sufficiently continuous and systematic to justify haling the defendant into court. *Special* jurisdiction is asserted when the defendants' forum contacts are sporadic, but the cause of action arises out of those contacts.

■ This distinction is significant because in order to assert general jurisdiction there must be substantial forum related activity on the part of the defendant. Thus, for general jurisdiction, the threshold for satisfying minimum contacts before considering convenience or more general fairness concerns is higher than in special jurisdiction cases.

In *Helicopteros,* the Supreme Court examined general jurisdiction. However, as Justice Brennan pointed out, the jurisdictional issue presented in that case might have been considered as a more hybrid type, because if the defendant's forum contacts were related to, although not arising out of, the cause of action, the case might be treated as one asserting specific jurisdiction. *See* 466 U.S. at 421, 104 S.Ct. at 1875. That issue was left open by the Supreme Court—and is the issue before the court now.

■ Hanna and Noranda have argued that Alumax is the alter ego of Alumax Fabricated, an Idaho company, and therefore subject to general jurisdiction. However, it is quite apparent that Fabricated's business activities have nothing to do with the cause of action in this case—the necessary clean up of the Blackbird Mine. Thus, while general jurisdiction over Fabricated may be proper because of its business activities in Idaho, and jurisdiction over Alumax as the owner of Fabricated could be justified in an action related to Fabricated's business activities, it's harder to take the general jurisdiction argument as far as Noranda wishes it to go.

Hanna and Noranda's position, at bottom, posits that because Alumax reasonably could expect litigation in Idaho relating to Fabricated's activities, it should also be required to expect litigation related to the business activities of a completely different company. Judge Boyle, and this court, simply could not accept this position. Therefore, Judge Boyle's analysis, relying as it did on theories of special jurisdiction, is more appropriate to this case than Hanna and Noranda's theory of general jurisdiction.

This court knows that in determining personal jurisdiction, it is to focus primarily on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). The standard remains that once minimum contacts have been established, the courts, in appropriate cases, "may" consider these contacts "in light of other factors to determined whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). Under these considerations and in this particular action, personal jurisdiction over Alumax is not proper.

### 2. Pechiney

■ As noted above, Judge Boyle determined that Pechiney's motion to dismiss should be granted because the sole connection Pechiney (who has never maintained an office in Idaho, never manufactured nor sold any products in Idaho, never solicited any business in Idaho nor had any Idaho employees or agents) has to this case stems from a 1983 assumption agreement between Pechiney and Howmet, the successor to Howe Sound. Judge Boyle noted that at the time of this assumption agreement, all of Howe Sound's Blackbird Mine assets had been disposed of, and the agreement made no mention of the Blackbird Mine nor any residual liability. Judge Boyle therefore concluded that Pechiney had not purposely established the requisite minimum contacts with Idaho to justify the court exercising jurisdiction over this defendant.

Hanna and Noranda raise four main objections to Judge Boyle's recommendation that defendant Pechiney's motion to dismiss be granted. First, Hanna and Noranda reiterate the contention that Howe Sound's Idaho contacts should be imputed to Pechiney because of the assumption agreement. Hanna and Noranda assert that Judge Boyle has improperly distinguished the facts in this case from controlling case law.

Second, Hanna and Noranda assert it is not unreasonable to expect Pechiney to litigate in this State. Hanna and Noranda again assert that Judge Boyle has misapplied the case law. They further contend that since the majority of witnesses are here, Idaho is the most appropriate forum for this action. Third, Hanna and Noranda assert that, under CERCLA, this court should assert jurisdiction over Pechiney. And fourth, Hanna and Noranda raise an argument not presented to Judge Boyle (discussed by this court in the motion to stay analysis above) that recent events compel a stay of these proceedings.

The court has considered these objections. Judge Boyle determined that jurisdiction over Pechiney would not be proper in this action. Hanna and Noranda have failed to convince this court otherwise. Their challenge to the cases relied upon by Judge Boyle repeat arguments considered by him and rejected. The court believes the analysis undertaken by Judge Boyle on this issue was proper. The court believes, after conducting a *de novo* review of the jurisdictional case law and the relevant sections of CERCLA, that Judge Boyle's conclusion is supported by law and will be adopted by this court.

## IV. CONCLUSION

Because the court finds the report and recommendation of Judge Boyle to be well founded in law and fact, the court hereby accepts in their entirety, and adopts as its own, the findings made by Judge Boyle.

## ORDER

Acting on the recommendation of Judge Boyle, and this court being fully advised in the premises,

IT IS HEREBY ORDERED that:

(1) all objections to the report and recommendation having been considered are hereby OVERRULED, and Magistrate Judge Boyle's report and recommendation, docket no. 313, is ADOPTED in its entirety;

(2) Hanna and Noranda's motion to stay proceedings, docket no. 314, is DENIED;

(3) Alumet's motion for reconsideration, docket no. 317, is DENIED; and

(4) this matter is set for settlement conference before the Honorable Larry M. Boyle on April 28–29, 1993, at 9:30 a.m., at the United States Courthouse, Boise, Idaho.

## ORDER DENYING RECONSIDERATION

Currently pending before the court is a motion for partial reconsideration, filed by the United States. The United States asks this court to vacate that part of the court's March 19, 1993, order in which it denied Hanna and Noranda's motion for stay of proceedings because the United States had entered the case. In the motion for stay, Hanna and Noranda had argued that because the United States had indicated its intent to sue Hanna, Noranda, Alumax, Alumet and Pechiney under CERCLA, and claims by the United States under CERCLA are allowed nationwide service of process, this court should not rule on Judge Boyle's recommendation regarding the pending motions to dismiss but should instead delay its consideration of the issue until this new and independent basis for personal jurisdiction over all defendants had been established by the United States as a party.

The court denied the motion to stay, ruling that whatever right to nationwide service of process the United States might have under CERCLA, its right did not necessarily extend to Hanna and Noranda, and further that even under the amended section 113 of CERCLA, a court may not be able to constitutionally exercise personal jurisdiction where such jurisdiction would offend due process and "traditional notions of fair play and substantial justice."

The United States asserts that the issue of nationwide process under CERCLA was never raised on the merits, and should not have been reached by this court. It notes that it is the only party with the potential to use the CERCLA section at issue, and contends that it was not necessary for the court to discuss the issue, since private litigants could not avail themselves of this process.

The court declines to reconsider its prior order regarding this issue. The issue of nationwide service under CERCLA *was* clearly raised by Hanna and Noranda, and asserted by them as one reason why a stay was necessary, in their contention that the court should wait for the United States to enter this case and use the CERCLA provision to achieve nationwide service. Hanna and Noranda asserted to the court that jurisdiction as to *their* third party defendants would be different after the United States entered the suit.

The court ruled *only,* that *as to Hanna and Noranda's third party defendants,* the court would not stay its ruling on personal jurisdiction. The court made no ruling as to the ability of the United States to achieve jurisdiction over any defendant by using the amended CERCLA. That issue was not before the court, and the court has not taken any position on that issue.

The court, however, will take this opportunity to correct a clerical error in pages 4 and 13 of its order, in which the court stated that Judge Boyle determined that Pechiney's motion to dismiss should be *denied,* when the context indicates, and the word the court intended, is *granted.*\* As the court's order makes clear, Pechiney's motion to dismiss was granted.

Additionally, also pending is Alumet's motion for protective order, and motion to shorten time to respond to the motion for protective order. These motions relate to scheduled depositions which have already been held, and the court will therefore deem them MOOT.

\* [Editor's Note: Correction made for purposes of publication.]

## ORDER

Based upon the foregoing, and the court being fully advised in the premises,

**IT IS HEREBY ORDERED** that the motion for reconsideration filed by the United States is **DENIED.**

**IT IS FURTHER ORDERED** that Alumet's motions for protective order and to shorten time are **DENIED** as moot.

## REPORT AND RECOMMENDATION

BOYLE, United States Magistrate Judge.

### I.

### Factual Background

In 1983 the State of Idaho filed this action against M.A. Hanna Company and Hanna Services Company (hereafter collectively referred to as "Hanna") and Noranda Mining, Inc. and Noranda Exploration, Inc. (hereafter collectively referred to as "Noranda") under the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9601 (1982) (CERCLA) and various Idaho statutory and common law claims. The complaint sought monetary and injunctive relief in connection with environmental damage[1] allegedly caused by mining activities at the Blackbird Mine in Lemhi County, Idaho. In 1990, Hanna and Noranda (hereafter for the limited purpose of these instant motions will be referred to as plaintiffs), who presently own and operate the mine, filed third party complaints against various parties including Alumet Corporation (hereafter Alumet), Alumax, Inc. (hereafter Alumax) and Pechiney Corporation (hereafter Pechiney) seeking monetary and injunctive relief including contribution for the recovery of response costs under CERCLA.

1. The Complaint alleges that the environmental damage at the Blackbird Mine site includes ten miles of underground workings, an open pit and three million tons of tailings, waste rock and overburden through which both ground and surface water drain and become contaminated.

2. Calera was a New Jersey corporation that was incorporated in 1904. It became a subsidiary of Howe Sound in 1920.

The record demonstrates that the Blackbird Mine has been the site of mineral exploration since 1893 when the first mineral discovery was made. In 1943, Howe Sound, a Maine corporation with extensive mining operations in North and South America, became interested in the area. As a result, an employee of Howe Sound, one H.B. Smith, began staking mining claims and acquiring options in the area. In addition, limited exploration and diamond drilling took place. In 1944, Calera Mining Co.[2], a wholly owned subsidiary of Howe Sound, took title to the property. Thereafter, further exploration occurred which culminated in full scale cobalt production by 1951.

Until 1959, the entire cobalt production from the mine was purchased by the United States government for strategic purposes at a price that was higher than market rates. When the government contract was fulfilled, cobalt mining apparently ceased because the market price for cobalt would not justify further operations. In 1959, Calera changed its name to Misco. In 1960, Misco was dissolved pursuant to New Jersey law.

The record reveals that in December, 1959 the mill and all related equipment were sold by Calera to Machinery Center, Inc.[3] In April, 1960 all of the physical assets at the mine, exclusive of the mill and mining claims, were also sold to Machinery Center. In December, 1960 Misco transferred all interests in the mining claims to Howe Sound pursuant to its dissolution.[4]

In May, 1962 Misco purported to quitclaim all mining interests to Howard Sims and Jessie Shine who in turn leased the property to Roger Pierce and Machinery Center. Howe Sound changed its name to Howmet in 1965 and quitclaimed all interest in the mine to Roger Pierce.

3. The record indicates that Roger Pierce was the president of Machinery Center. Machinery Center was Hanna's predecessor in interest.

4. The record suggests Misco also transferred significant assets unrelated to the Blackbird Mine to Howe Sound upon its dissolution. These assets were the nucleus for Howmet Turbine Components Corp. (hereafter HTCC) which is in the business of precision casting.

After Howe Sound changed its name to Howmet in 1965, it went through two statutory mergers, one in 1970, and the second in 1975.[5] As a result of these mergers, Howmet became a wholly owned subsidiary of Pechiney Ugine Kuhlmann Corporation (PUKCO), which in turn was a wholly owned subsidiary of Pechiney Ugine Kuhlmann (hereafter Pechiney/France).

In 1983, Alumax, Inc., an international aluminum company, began negotiating for the sale of Pechiney/France's United States aluminum assets. For tax reasons, a decision was made to have a Pechiney/France subsidiary assume any liabilities of Howmet unrelated to the aluminum business to protect Alumax.[6] To aid in the transaction, the non-aluminum assets and liabilities of Howmet were transferred to PUKCO, which transferred them to its wholly owned subsidiary, Pechiney. The transferred assets and liabilities were essentially those of Howmet Turbine Components Corp.[7] Thereafter, the entire stock of Pechiney was transferred by PUKCO to its parent, Pechiney/France.

After this transfer, Pechiney/France sold its aluminum assets through a purchase of the stock of PUKCO. Thereafter, Howmet was renamed Alumet, Inc. and PUKCO was renamed Alumet Holding Corporation.

## II.

### Motions at Issue

In response to third party complaints filed by Hanna and Noranda, third party defendants Alumet, Alumax, and Pechiney have moved to dismiss for lack of personal jurisdiction and because service of process was inadequate.[8] Extensive discovery related to the jurisdictional issues has been conducted and the case was referred to the undersigned by Hon. Edward J. Lodge, District Judge. The motions to dismiss have been fully briefed, argued and are ready for decision.

## III.

### Standard for Dismissal for Lack of Personal Jurisdiction

It is well established that a plaintiff has the burden of demonstrating that a court has personal jurisdiction over a defendant. *Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir.1990) *rev'd on other grounds*, —— U.S. ——, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *Scott v. Breeland*, 792 F.2d 925 (9th Cir.1986). Where a court's ruling is based only upon the presentation of affidavits and discovery materials, dismissal is appropriate only if the plaintiff fails to make a prima facie showing of personal jurisdiction.[9] *Alexander v. Circus Circus Enterprises, Inc.*, 939 F.2d 847 (9th Cir.1991). *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280 (9th Cir.1977). Under such circumstances, in determining whether plaintiff has established a prima facie case of jurisdiction, plaintiff's allegations of jurisdictional facts are presumed true unless contradicted by the opposing pleadings and all factual disputes are decided in its favor. *See* 2A Moore's Fed.Prac. ¶ 12.07[.-2], *citing Nelson*

---

5. In 1970, Howmet merged with Pechiney Aluminum Corporation with the resulting corporation named Howmet. The resulting corporation possessed significant aluminum assets. In 1975, Howmet merged with Pechiney Enterprises Housing Corporation and again, the resulting corporation was known as Howmet.

6. At this time, the record reveals Howmet essentially had two distinct businesses: an aluminum division represented by Howmet Aluminum Corporation (HAC) and a precision castings division represented by HTCC.

7. HTCC was at one time a defendant in the State's action and a third party defendant in the instant action. HTCC was voluntarily dismissed by the State and the plaintiffs.

8. Motions to dismiss were filed collectively by Alumet Corporation, Alumet Holding Corporation, Alumax, Inc., Howmet Corporation, Calera Mining Company, Misco P.C., Inc., and How Sound Company. Counsel has represented that Calera Mining Company and Misco P.C., Inc., have been dismissed. Plaintiffs have failed to address any basis for asserting jurisdiction over Alumet Holding Corporation. Accordingly, the Court will recommend to the District Court that Alumet Holding Corporation's Motion to Dismiss be granted.

9. Plaintiffs are still required to prove personal jurisdiction at trial by a preponderance of the evidence. *See Alexander v. Circus Circus Enterprises, Inc.*, 939 F.2d 847 (9th Cir.1991). *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280 (9th Cir.1977).

by *Carson v. Park Industries, Inc.*, 717 F.2d 1120 (7th Cir.1983); *Wyatt v. Kaplan*, 686 F.2d 276 (5th Cir.1982); *Welsh v. Gibbs*, 631 F.2d 436 (6th Cir.1980), *cert. denied* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981).

In determining whether personal jurisdiction exists over a nonresident defendant, plaintiffs must establish that 1) the long-arm statute of the forum confers personal jurisdiction over the nonresident defendant, and 2) that the exercise of jurisdiction conforms with constitutional principles of due process. *See generally, Lake v. Lake*, 817 F.2d 1416 (9th Cir.1987). Rule 4(f) Fed.R.Civ.P. governs the territorial limits of effective service and provides for extraterritorial service only where such service is authorized by a statute of the United States or by the Federal Rules of Civil Procedure. Because no statute of the United States provides for extraterritorial service under the facts of this case, service must be carried out according to the Federal Rules of Civil Procedure. Rule 4(e) Fed.R.Civ.P. provides for service upon a party not an inhabitant or found within the forum state under two circumstances: when such service is authorized by statute, or pursuant to a statute of the state in which the district court is located. Because no federal statute authorizes process in this case, service of process must be effected pursuant to Idaho law. Idaho Code § 5-515 provides that service may be made upon any entity subject to jurisdiction of the courts of the State of Idaho. Accordingly, to determine whether service of process is effective, it is necessary to look to Idaho's long-arm statute, I.C. § 5-514, to determine whether Idaho courts would have personal jurisdiction over the nonresident defendant.

Idaho's long-arm statute provides in pertinent part:

**5-514. Acts subjecting persons to jurisdiction of courts of state.** Any person, firm, company, association or corporation, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, firm, company, association or corporation, and if an individual, his personal representative, to the jurisdiction of the courts of this state *as to any cause of action arising from the doing of any of said acts:*

(a) The transaction of any business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish, transact or enhance the business purpose or objective or any part thereof of such person, firm, company, association or corporation;

(b) The commission of a tortious act within this state;

(c) The ownership, use or possession of any real property situate within this state;

I.C. § 5-514 (Emphasis added).

The Idaho Supreme Court has determined I.C. § 5-514 is remedial in nature and therefore, it is to be liberally and broadly construed. *Doggett v. Electronics Corp. of America*, 93 Idaho 26, 454 P.2d 63 (1969); *Southern Idaho Pipe & Steel Co. v. Cal-Cut Pipe & Supply, Inc.*, 98 Idaho 495, 567 P.2d 1246 (1977). In *Tandy & Wood, Inc. v. Munnell*, 97 Idaho 142, 540 P.2d 804 (1975), the Idaho Supreme Court considered the phrase "arising from" to determine a nonresident's amenability to suit in Idaho. In determining whether personal jurisdiction over the defendant was properly asserted, the court noted that the concept of "arising from" is broad and that all that is required is a *substantial connection* between the defendant's forum contacts and the cause of action.[10] Accordingly, to satisfy Idaho's long-arm statute, the Court is required to consider the third party defendants' contacts with the state and determine whether a substantial connection exists between the contacts and the cause of action.

In addition to satisfying the state long-arm statute, the exercise of personal jurisdiction must also comply with due process. "The basic rule is that the defendant must have certain minimal contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and

---

**10.** In *Tandy & Wood,* the nonresident defendant owned real estate in Idaho. The Supreme Court of Idaho concluded that there was a substantial connection between the defendant's ownership and plaintiff's claim for breach of a real estate broker's employment contract.

substantial justice." *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280 (9th Cir.1977), *citing International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

To determine whether the assertion of personal jurisdiction comports with the Due Process Clause of the United States Constitution, the Ninth Circuit has adopted a three-prong test:

> 1) the nonresident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; 2) the claim must be one that arises out of or results from the defendant's forum-related activities; and 3) the exercise of jurisdiction must be reasonable.

*E.g., Alexander v. Circus Circus Enterprises, Inc.,* 939 F.2d 847, 850 (9th Cir.1991).

Applying these standards, the Court will determine whether personal jurisdiction is properly asserted against the third party defendants, and whether service of process was effective.

## IV.

### Alumet's Motion to Dismiss

Alumet is a holding corporation with significant aluminum assets. Alumet is not located in Idaho and has never conducted business in Idaho. Alumet's sole connection to the forum state is through its predecessor Howmet, formerly Howe Sound. Plaintiffs contend that personal jurisdiction exists over Alumet because it is the "present corporate incarnation of Howe Sound" through two statutory mergers and a name change. Based upon this corporate relationship, plaintiffs assert Howe Sound's forum contacts should be imputed to Alumet for purposes of exercising personal jurisdiction over Alumet in Idaho. In support, plaintiffs cite *Duris v. Erato Shipping, Inc.,* 684 F.2d 352 (6th Cir.

1982); *Goffe v. Blake,* 605 F.Supp. 1151 (D.Del.1985); *Cole v. Caterpillar Machinery Corp.,* 562 F.Supp. 179 (M.D.La.1983); *Maryland Nat'l Bank v. Shaffer Stores Co.,* 240 F.Supp. 777 (D.Md.1965). Consequently, plaintiffs argue that the Court must determine whether Howe Sound's conduct would subject it to personal jurisdiction, and if so, impute these contacts to Alumet.

Plaintiffs assert personal jurisdiction is properly exercised over Howe Sound under various theories including Howe Sound's transaction of business, the ownership, use or possession of real property, and commission of a tort within the State of Idaho. Plaintiffs also argue that because an alter ego relationship existed between Howe Sound and its wholly owned subsidiary Calera, personal jurisdiction is properly asserted over Howe Sound based upon Calera's alleged transaction of business, ownership, possession or use of real property, and the commission of a tort within the State of Idaho.[11]

In their pleadings and throughout the briefs submitted in opposition to the motions to dismiss, plaintiffs portray Howe Sound as being the entity that actually conducted operations at the Blackbird Mine. However, the record before the Court demonstrates Howe Sounds' involvement was more limited. The record reveals that in 1943 and early 1944 before title to the mine was transferred to Calera, an employee of Howe Sound, one H.B. Smith, negotiated for and took title to various mining claims at the Blackbird site. During this time period, exploration including diamond drilling was conducted to determine the viability of full scale mining operations. In 1944, the decision was made to register Calera in Idaho. Thereafter, title to the mining claims was transferred to Calera. Although the parties dispute the respective involvement of Calera and Howe Sound with regard to operation and ownership of the mine, the record reveals that title to the mine during all periods of operation was held by Calera and that government contracts for

---

11. Because the Court finds personal jurisdiction is properly asserted over Alumet based upon Howe Sound's use and possession of real estate, and the transaction of business within the State of Idaho, the Court need not consider plaintiffs' other theories.

cobalt were made with Calera.[12]

As an initial matter, the Court notes the difficulty that both the parties and the Court have experienced in attempting to come to a full understanding of the factual circumstances surrounding the operations at the Blackbird Mine since 1943. Although the evidence has been unclear and contradicted at times, after a careful review of the record, the Court finds that plaintiffs have succeeded in establishing a prima facie case given the Court's obligation to resolve factual disputes in favor of a finding of personal jurisdiction.[13] *See* 2A Moore's Fed.Prac. ¶ 12.07[.–2], citing *Nelson by Carson v. Park Industries, Inc.,* 717 F.2d 1120 (7th Cir.1983); *Wyatt v. Kaplan,* 686 F.2d 276 (5th Cir.1982); *Welsh v. Gibbs,* 631 F.2d 436 (6th Cir.1980), *cert. denied* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981). The record clearly demonstrates Howe Sound's use or possession of real property within the State of Idaho.[14] The record likewise demonstrates that Howe Sound transacted business within the state. In the Court's view, Howe Sound's exploration activities[15] at a time when title was held by a Howe Sound employee comes within I.C. § 5–514's definition of transacting business which is defined as "the *doing of any act* for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish, transact or enhance the business purpose or objective or any part thereof of such person, firm, company, association or corporation." I.C. § 5–514. (Emphasis added).

Given the Idaho Supreme Court's mandate that I.C. § 5–514 be construed broadly and liberally, *see Doggett v. Electronics Corp. of America,* 93 Idaho 26, 454 P.2d 63 (1969); *Southern Idaho Pipe & Steel Co. v. Cal–Cut Pipe & Supply, Inc.,* 98 Idaho 495, 567 P.2d 1246 (1977), the Court is of the opinion that the claims asserted in the third party complaints are substantially connected to Howe Sound's forum contacts. Although the parties have hotly disputed whether Howe Sound's use and possession of property is relevant given CERCLA's focus on the disposal of waste, the Court is satisfied exploration activities which included diamond drilling resulted in the accumulation of at least some waste rock.[16] The gravamen of the plaintiffs' claim is that the mine operation caused significant waste rock, tailing and overburden to be accumulated through which ground and surface water drains and is contaminated. Given the prima facie evidentiary standard and the Ninth Circuit's admonition that factual disputes be construed in favor of finding jurisdiction, *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280 (9th Cir.1977), the Court is satisfied that a substantial connection exists between Howe Sound's exploration activity and plaintiffs' claims. Accordingly, the Court finds that plaintiffs have made a prima facie showing of facts demonstrating Howe Sound's contacts would suffice for exercising personal jurisdiction under I.C. § 5–514.

Because the Court finds Alumet to be the successor of Howe Sound through two statutory mergers and a name change, the Court must now consider whether Howe Sound's forum contacts are properly imputed to Alumet.[17] A review of the following cases demonstrates that courts have imputed the acts

---

**12.** There is some evidence suggesting Howe Sound's involvement in negotiating for the government contracts.

**13.** The Court's conclusion in this regard has no bearing on plaintiffs' burden to establish personal jurisdiction at trial given the evidentiary standard applicable at this stage of the proceedings.

**14.** The record also demonstrates Howe Sound's ownership of real property within the State of Idaho after 1960 when Misco (formerly Calera) transferred its interest in the property to Howe Sound. Because of a lack of evidence demonstrating mining or exploration by Howe Sound during this period of ownership, it has not been considered by the Court as a basis for asserting personal jurisdiction.

**15.** Because I.C. § 5–514 clearly provides that an agent's activities suffice for obtaining personal jurisdiction over the principal, it is clear that Smith's activities may be considered those of Howe Sound.

**16.** The Court's finding in this regard is not intended to have any bearing upon substantive issues at trial given the evidentiary standard applicable at this stage of the proceedings.

**17.** The Idaho Supreme Court has not considered whether I.C. § 5–514 can or should be satisfied by attributing the acts of a predecessor to a successor by merger or consolidation.

of predecessor to a successor corporation where forum law would hold the successor liable for the predecessor's conduct. *See Duris v. Erato Shipping, Inc.*, 684 F.2d 352 (6th Cir.1982) *aff'd sub nom., Pallas Shipping Agency, Ltd. v. Duris*, 461 U.S. 529, 103 S.Ct. 1991, 76 L.Ed.2d 120 (1983); *Goffe v. Blake*, 605 F.Supp. 1151 (D.Del.1985); *Cole v. Caterpillar Machinery Corp.*, 562 F.Supp. 179 (M.D.La.1983); *Maryland Nat'l Bank v. Shaffer Stores Co.*, 240 F.Supp. 777 (D.Md. 1965). Recognizing that a successor corporation by merger or consolidation is essentially the present corporate embodiment of the predecessor, these decisions have imputed the forum contacts of the predecessor to prevent formalistic changes from immunizing the successor from suit in the forum where its predecessor clearly would have been subject to personal jurisdiction. *See Duris v. Erato Shipping, Inc.*, 684 F.2d at 356. The Court concurs in this persuasive authority to the extent these decisions impute a predecessor's forum contacts to a successor by merger or consolidation, for the limited purpose of satisfying the forum's long-arm statute. Accordingly, when Howe Sound's forum contacts are imputed to Alumet, the Court finds that I.C. § 5–514 has been satisfied.

Before a Court can assert personal jurisdiction over a nonresident defendant, it must also be shown that the exercise of jurisdiction comports with due process. *See generally, Lake v. Lake*, 817 F.2d 1416, 1420–22 (9th Cir.1987). A review of *Duris v. Erato Shipping, Inc., Goffe v. Blake, Cole v. Caterpillar Machinery Corp.* and *Maryland Nat'l Bank v. Shaffer Stores Co.*, demonstrates that these courts have not uniformly regarded due process considerations. Of these decisions, only the *Cole* court considered whether the exercise of personal jurisdiction over the successor corporation was consistent with due process.[18] The United Supreme Court

has not considered the practice of imputing contacts for purposes of satisfying due process. Nonetheless, the United States Supreme Court has noted the importance of considering due process concerns with all nonresident defendants. *See Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984) citing *Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980). Moreover, as the Ninth Circuit has noted, "questions of personal jurisdiction admit of no simple solutions and that ultimately due process issues of reasonableness and fairness must be decided on a case-by-case basis." *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 426 (9th Cir.1977). The Court is of the opinion that a case-by-case analysis requires a due process analysis as to the specific entity disputing jurisdiction. *Compare Inter–Americas Ins. Corp. v. Xycor Systems, Inc.*, 757 F.Supp. 1213 (D.Kan.1991). However, it is apparent that the present due process test, without imputing contacts, does not lend itself to exercising personal jurisdiction over an entity such as Alumet.

The Ninth Circuit utilizes a three prong test for determining whether the exercise of personal jurisdiction would offend due process in cases involving specific jurisdiction:

1) the nonresident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; 2) the claim must be one that arises out of or results from the defendant's forum-related activities; and 3) the exercise of jurisdiction must be reasonable.

*E.g., Alexander v. Circus Circus Enterprises, Inc.*, 939 F.2d 847, 850 (9th Cir.1991).

---

18. In *Duris*, the Court undertook no due process analysis whatsoever. In *Maryland Nat'l Bank*, the court declined to apply a due process test to the successor corporation which had assumed a contract that required performance in the forum state. After noting the defendant's assumption came within the literal language of the state long arm statute which asserted personal jurisdiction over a defendant sued on any contract executed in the forum state, the court declined to apply a

due process test to the defendant. Instead, relying on *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) the Court focused on the contract defendant had assumed and exercised personal jurisdiction based upon the contract's contacts with the forum state. In *Goffe*, the court undertook a due process test but applied it to the predecessor, not successor corporation seeking to avoid exercise of personal jurisdiction.

In circumstances such as those of the instant case where the successor corporation has had no forum related contacts, it is apparent that a strict application of this test vis-a-vis the successor would prohibit the exercise of personal jurisdiction. Because the Court deems some form of due process analysis is necessary and because a strict application of the three prong test would preclude jurisdiction over the present corporate embodiment of an entity that clearly was subject to personal jurisdiction in the forum, the Court is of the opinion that a predecessor's forum contacts ought to be attributed to the successor for purposes of satisfying the first two elements enunciated in *Alexander*. Thereafter, the third prong of the test which focuses upon the reasonableness of the exercise of personal jurisdiction under the particular facts of the case ought to be applied to the successor entity. Applied in this manner, the test prevents formalistic corporate changes from immunizing the successor entity·from forum litigation while still ensuring the exercise of jurisdiction will be reasonable under the particular facts and circumstances of a case.

Applied to the facts of this case, the Court finds the first two elements to be satisfied when Howe Sound's contacts are imputed to Alumet. Purposeful availment has been described as requiring "that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *Id.* at 851. As the United States Supreme Court noted in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum and whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." The objective of the "purposeful availment requirement insures that defendants will not be haled into a jurisdiction solely as a result of random, fortuitous or attenuated contacts." *Id.* at 474, 475, 105 S.Ct. at 2183.

In the Court's view, Howe Sound's exploration activity clearly amounts to purposeful contacts. By obtaining mining rights and initiating exploration, Howe Sound purposely availed itself of the benefits and protection of Idaho law. In addition, as previously noted when considering whether Howe Sound's contacts satisfy I.C. § 5–514, the Court finds plaintiffs' claims arise from or are the result of these forum contacts.

The Court also finds that the exercise of personal jurisdiction is reasonable under the facts and circumstances of this case. While asserting personal jurisdiction over Alumet may represent the outer bounds of due process given the length of time between Howe Sound's contacts and the initiation of plaintiffs' third party complaints [19], the Court is of the view that Alumet could reasonably anticipate being called upon to litigate in a forum from which its predecessor derived significant benefits. As was noted in *Cole v. Caterpillar Machinery Corp.*:

> Since [the successor corporation] could have availed itself of the benefits of the forum in order to sue for monies owed its corporate predecessor, it seems only fair that [the successor corporation], deriving benefits from the forum, should also be expected to answer for liabilities incurred by the alleged negligent actions of its predecessor.
>
> \*    \*    \*    \*    \*    \*
>
> Having available the benefits, [the successor corporation] has a corresponding duty to answer for liabilities.

562 F.Supp. 179, 180–81.

Accordingly, the Court finds that constitutional principles of due process would not be violated by requiring Alumet to appear and present a defense in Idaho. Having concluded that personal jurisdiction is proper in this case, the Court also finds that service of process was effective.

---

**19.** The length of time between a predecessor's forum contacts and the initiation of suit has not been recognized as a factor for determining reasonableness. Nonetheless, in the Court's view such a factor does bear upon whether an entity could reasonably anticipate being called upon to present a defense in the forum state.

Therefore, the Court recommends to the district court that Alumet's Motion to Dismiss be denied.

## V.

## Alumax's Motion to Dismiss

Alumax is a holding company with extensive aluminum assets. Alumax is not a resident of the State of Idaho and has not directly conducted business within the state. Nonetheless, plaintiffs contend that personal jurisdiction is properly asserted over Alumax because it is the alter ego of Alumet, and because Alumax is already presently doing business in Idaho due to an alter ego relationship with its subsidiary Alumax Fabricated Products, Inc. These theories will be addressed in turn.

It is well established that the mere existence of a parent-subsidiary relationship is insufficient to charge a parent company for the acts of its subsidiary and to establish personal jurisdiction over the parent based upon the acts of its subsidiary. *See Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 336, 45 S.Ct. 250, 251, 69 L.Ed. 634 (1925); *Transure, Inc. v. Marsh & McLennan, Inc.,* 766 F.2d 1297 (9th Cir.1985); *Idaho Potato Commission v. Washington Potato Commission,* 410 F.Supp. 171 (D.Idaho 1975). Accordingly, plaintiffs have the burden of providing prima facie evidence of facts that would justify piercing Calera's corporate veil for the purpose of exercising jurisdiction over Alumax.[20]

Plaintiffs have come forward with evidence demonstrating some commonality of officers and directors between Alumet and Alumax. In addition, plaintiffs point to corporate actions taken by Alumet transferring assets to Alumax subsidiaries and that in 1991, the Alumet board of directors was cut back to a single director.[21] Alumax has attempted to contradict this evidence by filing an affidavit

suggesting generally, that Alumax operates under a philosophy of decentralized management. *See* Affidavit of Gerald Kitchen.

Assuming this evidence constitutes a prima facie showing of an alter ego relationship, the Court is of the opinion that this showing nonetheless fails to establish personal jurisdiction over Alumax in Idaho under the circumstances of this case.

At the time this alter ego relationship is alleged to have occurred, Alumet maintained no contacts with the State of Idaho and neither Alumet nor its predecessors had maintained any forum contacts in nearly twenty years. The record before the Court demonstrates that neither Alumax nor Alumet has ever had any contact with Idaho or the Blackbird Mine at the time of the alleged alter ego relationship, therefore there can be no question but that Alumax's alleged domination of Alumet fails to establish a connection with Idaho or the Blackbird Mine. Accordingly, the Court concludes that even if Alumet is viewed as being in Idaho because its predecessor's contacts are imputed to it, an alleged alter ego relationship between Alumet and Alumax totally unrelated in time or subject matter fails to satisfy the requirements of I.C. § 5–514.

In any event, the Court is also of the view that the assertion of personal jurisdiction over Alumax based upon its alleged domination of Alumet would violate due process if these activities were used to assert personal jurisdiction over Alumax in Idaho. The exercise of jurisdiction under these circumstances is just too attenuated and would not provide Alumax with fair warning such that it could reasonably anticipate being brought into court in Idaho. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In the Court's view, it is one thing to require Alumet to answer for the activities of its predecessor in interest where it is the present corporate embodi-

---

**20.** The parties dispute what standard should be applied for determining whether the corporate veil should be pierced for jurisdictional purposes. Alumax contends forum veil piercing law should be applied while plaintiffs argue traditional alter ego factors are sufficient for determining jurisdictional issues at this stage of the proceedings. The potential significance of this issue is manifest

when the applicable tests are compared. In light of the Court's recommendation, the Court need not address this issue.

**21.** Based upon the record before the court, it does not appear that this single director was also an officer or director of Alumax.

ment of that entity. It is quite different to attempt to assert jurisdiction over Alumax because it may have dominated Alumet's affairs unrelated to any forum contacts at a point in time when Alumet no longer maintains any contact with the forum state. *Compare Wells Fargo*, 556 F.2d at 422 (when asserting personal jurisdiction based upon principles of agency, agency must be at a time relevant to the proceedings).

The circumstances of this case demonstrate that Alumax has not purposely availed itself of the benefits and protection of Idaho law and the Court sees no justification for imputing Howe Sound's contacts to bridge this gap. Similarly, because it is clear that Alumax's alleged domination of Alumet had no connection with Idaho or the Blackbird Mine, there are no contacts with the forum from which plaintiffs' claims could arise. Finally, given the unique circumstances of this case, the Court is of the opinion that the exercise of jurisdiction over Alumax would be unreasonable. Accordingly, the Court concludes that any alter ego relationship between Alumet and Alumax cannot be the basis for asserting personal jurisdiction over Alumax in Idaho.

Plaintiffs also assert personal jurisdiction is properly exercised over Alumax because it is presently doing business in Idaho through a subsidiary, Alumax Fabricated Products, Inc. (hereafter Fabricated). The record demonstrates that Fabricated manufactures and markets aluminum products in Boise, Idaho and that Fabricated has never had any involvement or connection with the Blackbird Mine. Plaintiffs argue Alumax is the alter ego of Fabricated, and therefore can be considered present in Idaho under a theory of "general jurisdiction." As previously noted, personal jurisdiction and service of process issues are dependent upon the forum state's long-arm statute. *See generally, Lake v. Lake*, 817 F.2d 1416 (9th Cir.1987); Rule 4 Fed.R.Civ.P. Accordingly, personal jurisdiction over Alumax must comport with I.C. § 5–514's requirements that the claims arise from the defendant's forum contacts. Although the Idaho Supreme Court has interpreted I.C. § 5–514 as exercising all the jurisdiction available to the state under the due

process clause of the United States Constitution and has ruled that it is to be construed liberally, *see Doggett v. Electronics Corp. of America*, 93 Idaho 26, 454 P.2d 63 (1969), the express legislative requirements of the statute cannot be ignored. As the Ninth Circuit has noted:

> The fact that courts have interpreted the words of the Connecticut statute liberally does not mean that the express legislative requirements themselves may be ignored in the course of that interpretation.... And, unlike some state long-arm statutes, *see, e.g.,* Cal.Civ.Proc.Code § 410.10,.... apparently neither the Connecticut nor the Nevada act contains a catch-all clause granting *in personam* jurisdiction in all instances which would not violate due process.

*Wells Fargo*, 556 F.2d at 417 (citations omitted).

Accordingly, Alumax's contacts (imputed by the alter ego relationship) with the State of Idaho must be substantially connected to the cause of action. In the instant case, even if the Court were to assume an alter ego relationship existed between Alumax and Fabricated, the record is devoid of any evidence suggesting Fabricated's contacts are related to plaintiffs' claims. Accordingly, personal jurisdiction may not be asserted over Alumax based upon any alter ego relationship with Fabricated given I.C. § 5–514's mandate that the claims arise from a defendant's forum contacts.

The Court concludes that plaintiffs have failed under either theory to establish personal jurisdiction over Alumax. Consequently, the service of process was inadequate and the Court recommends to the district court that Alumax's Motion to Dismiss be granted.

## VI.

### Pechiney's Motion to Dismiss

Hanna and Noranda argue that personal jurisdiction is properly asserted over Pechiney because it assumed the liabilities of Howe Sound. Relying on *City of Richmond, Va. v. Madison Management Group, Inc.*, 918 F.2d 438 (4th Cir.1990) and *Simmers v. American Cyanamid Corp.*, 576 A.2d 376

(Pa.Super.1990), plaintiffs contend that Pechiney stands in the shoes of Howe Sound for purposes of establishing personal jurisdiction.

Pechiney contends that it has never had any contacts whatsoever with the State of Idaho and accordingly, the exercise of personal jurisdiction would be improper. Pechiney also disputes the contention that it assumed the liabilities of Howe Sound, asserting instead that the Howe Sound liabilities were retained by Alumet.

The record demonstrates that prior to the 1983 stock purchase agreement whereby Alumax obtained Pechiney/France's United States aluminum assets, pursuant to an assumption agreement, the non-aluminum assets and liabilities of Howmet (formerly Howe Sound) were transferred to Pechiney. The record suggests the assets were primarily those of Howmet Turbine Components Corporation.

Plaintiffs assert that by assuming the non-aluminum liabilities of Howmet, Pechiney necessarily assumed the liabilities of Howmet's predecessor, Howe Sound. Accordingly, plaintiffs contend that Howe Sound's contacts with the State of Idaho should be imputed to Pechiney for the purpose of establishing personal jurisdiction over Pechiney under the circumstances of the instant case.

Although issues of substantive liability are not presently before the Court, the Court finds plaintiffs have produced prima facie evidence demonstrating Pechiney assumed the non-aluminum liabilities of Howmet which may include the residual liabilities of Howe Sound. However, the Court disagrees with any contention that a finding of personal jurisdiction necessarily flows from this factual conclusion.

Plaintiffs rely upon *City of Richmond, Va. v. Madison Management Group, Inc.*, 918 F.2d 438 (4th Cir.1990) and *Simmers v. American Cyanamid Corp.*, 394 Pa.Super. 464, 576 A.2d 376 (1990) for the proposition that any time an entity assumes liability, it steps into the shoes of the original obligor for jurisdictional purposes. These cases are factually distinguishable and, in the Court's

view, should not be the basis for asserting personal jurisdiction over Pechiney in Idaho.

In *City of Richmond,* Interpace entered into a contract to supply concrete pipe that was used in a municipal water transmission line. Two years later, GHA Lock Joint, Inc. (GHA) purchased the Interpace assets relating to the manufacture of concrete pipe and continued the business. When a water line ruptured, the City of Richmond brought suit against various parties including GHA. On appeal, GHA challenged the trial court's assertion of personal jurisdiction where GHA had had no contacts with the State of Virginia. Noting that substantial evidence supported the jury's finding that GHA had impliedly assumed Interpace's liabilities, the court concluded jurisdiction was proper. Notably absent from the opinion is any analysis as to whether the assertion of jurisdiction violated due process under the circumstances of the case. Apparently, the court viewed the finding of an assumption of liabilities as controlling for purposes of satisfying both the state long-arm statute and due process.

In *Simmers,* a products liability action was brought against the manufacturers (and their successors in interest) of a radioactive contrast dye (thorotrast) used to perform diagnostic x-rays. The court was concerned with asserting jurisdiction over the successors in interest (by express or de facto merger and consolidation) of entities that had manufactured and distributed thorotrast. After concluding that Pennsylvania would hold the successor liable for the predecessor's acts, the court concluded jurisdiction over the successor entities was proper. Unlike the *City of Richmond* court, the court in *Simmers* did conduct a due process analysis. However, the analysis was directed not at the successor challenging jurisdiction, but at its predecessor. Finding that personal jurisdiction existed over the predecessor, the court concluded that personal jurisdiction was necessarily established over the successor.

The authority relied upon in *City of Richmond* and *Simmers* includes the same cases the Court reviewed when considering Alumet's Motion to Dismiss. *See Simmers v. American Cyanamid Corp.*, 394 Pa.Super. 464, 576 A.2d 376 (1990); *Crawford Harbor*

*Assoc. v. Blake Construction Co., Inc.*, 661 F.Supp. 880 (E.D.Va.1987); *Duris v. Erato Shipping, Inc.*, 684 F.2d 352 (6th Cir.1982), aff'd sub nom., *Pallas Shipping Agency, Ltd. v. Duris*, 461 U.S. 529, 103 S.Ct.1991, 76 L.Ed.2d 120 (1983); *Explosives Corp. of America v. Garlam Enterprises Corp.*, 615 F.Supp. 364 (D.C.Puerto Rico 1985); *Goffe v. Blake*, 605 F.Supp. 1151 (D.Del.1985); *United States v. Bliss*, 108 F.R.D. 127 (E.D.Mo. 1985); *Cole v. Caterpillar Machinery Corp.*, 562 F.Supp. 179 (M.D.La.1983); *Maryland Nat'l Bank v. Shaffer Stores Co.*, 240 F.Supp. 777 (D.Md.1965). Generally, these decisions assert personal jurisdiction whenever an entity would be liable under substantive forum law, and typically, the cases involve express or de facto mergers and consolidations.

The rationale for imputing the contact of the predecessor for jurisdictional purposes was summarized in *Simmers* as follows:

Plaintiffs must be permitted to establish jurisdiction over a

successor corporation based upon its predecessor's contacts with the forum. Otherwise, a corporation which voluntarily or by the operation of law assumes its predecessor's liabilities may be able to avoid the jurisdiction of the very forum where the liability accrued simply because it never did business within that forum. This result would be absurd especially when assets purchased by the successor, at least in part, were derived from the forum and the successor no doubt had knowledge of its predecessor's presence within the forum.

*Simmers v. American Cyanamid Corp.*, 394 Pa.Super. 464, 576 A.2d 376, 389–90 (1990).

The facts of the instant case are readily distinguishable from those of *City of Richmond* and *Simmers* and the authority relied upon therein. Pechiney is not, by express or de facto merger, the successor of Howe Sound or any other entity that conducted mining operations at the Blackbird Mine. Pechiney has not purchased the assets and continued the business of Howe Sound as

was the case in *City of Richmond*. Similarly, this case does not involve a successor entity that has purchased assets that are so connected with the forum as to put the successor on notice of its predecessor's presence in the forum. Finally, unlike the *City of Richmond* case, there was a significant lapse of time between Howe Sound's relevant forum contacts and Pechiney's alleged assumption of liabilities in 1983.

The record in the instant case reveals that Pechiney has never sold or manufactured any product in Idaho, has never solicited any business in Idaho, has never had any agents or employees in Idaho, nor has it ever maintained any offices in Idaho. Pechiney's sole connection with the instant case stems from the 1983 assumption agreement wherein Pechiney may have assumed the non-aluminum liabilities of Howmet that potentially include any residual Howe Sound liability. In the Court's view, it is significant that in 1983, all the Blackbird Mine related assets had long been disposed of, and that the assumption agreement made no mention of the Blackbird Mine or any residual liability derived therefrom. Moreover, the principle assets obtained by Pechiney, the precision casting business of Howmet Turbine Corporation, have had nothing to do with the State of Idaho and would not put Pechiney on notice of Howe Sound's forum contacts. In the Court's estimation, and there is nothing in the record to the contrary, Howe Sound's connection with Idaho contacts had been long forgotten.[22]

After carefully reviewing the *City of Richmond* and *Simmers* cases, the Court is of the opinion that this persuasive authority is best applied only in factually similar circumstances. As previously noted, the Court concurs in that line of cases imputing the contacts of a predecessor to a successor where the successor is essentially the same entity. In the Court's view, the formalities attendant to corporate mergers or consolidation, be it express or de facto, should not allow an

---

**22.** Plaintiffs point out that one of Pechiney's sister corporations purchased an interest in Howe Sound in 1962, two years after Calera ceased mining, and two years after all the physical assets at the mine site had been sold. At this time,

Pechiney was not in existence. The Court declines to impute knowledge of the Idaho contacts to Pechiney under the circumstances of this case given Howe Sound's extensive world wide assets.

entity to immunize itself from forum litigation where the successor is the present corporate incarnation of an entity over which jurisdiction would be asserted. Such a corporate relationship justifies imputing contacts for jurisdictional purposes. Although language contained in *Simmers* would purport to assert personal jurisdiction anytime an entity expressly or by operation of law assumes liabilities, the facts of *Simmers* involved express or de facto mergers. Moreover, when discussing the need for imputing contacts, the *Simmers* court expressed an important caveat pertinent to the instant case:

> This result would be absurd especially when the assets purchased by the successor, at least in part, were derived from the forum and the successor no doubt had knowledge of its predecessor's presence within the forum.

*Simmers v. American Cyanamid Corp.*, 576 A.2d at 390.

In the instant case, the record demonstrates that at the time of the assumption agreement, all Blackbird Mine related assets had long been disposed of,[23] and Howmet and its predecessors had long ceased doing business in Idaho. In the Court's view, these facts justify distinguishing *Simmers*.

The Court is of the opinion that the practice of imputing contacts is best left to situations involving express or de facto mergers where the successor is essentially an extension of the former entity. Accordingly, the Court declines to impute Howe Sound's forum contacts to Pechiney under the circumstances of this case.

The Court views the *City of Richmond* and *Simmers* precedent as questionable for another reason. The Court is of the opinion that the analysis, while perhaps leading to the correct result under the facts of the respective cases, is faulty to the extent it fails to determine whether the assertion of personal jurisdiction over the specific defendant nonetheless conforms to due process. As previously noted, the *City of Richmond* court undertook no due process analysis whatsoever and the *Simmers* court did not consider due process vis-a-vis the entity disputing jurisdiction. As the Court concluded when discussing Alumet's Motion to Dismiss, it is still necessary to conduct a due process analysis. *Compare Inter–Americas Ins. Corp. v. Xycor Systems, Inc.*, 757 F.Supp. 1213 (D.Kan.1991) (holding even though there is a compelling rationale for adopting under state long-arm law the general rule of exercising jurisdiction over the non-resident successor whenever liability could exist, the court must still take the second step of addressing due process).

In the instant case, the Court finds that I.C. § 5–514 has not been satisfied. Moreover, the Court is of the opinion that the exercise of personal jurisdiction over Pechiney would violate due process under the unique facts and circumstances of the case. In the instant case, it is clear that Pechiney in no way purposely availed itself of the privileges of conducting activities in Idaho involving the benefits and protection of its law. At the time of the 1983 assumption, all Blackbird related assets had long been disposed of and any connection with the mine forgotten.[24] In this context, the Court cannot conclude that Pechiney has purposely availed itself of the benefits and protection of Idaho and its courts, nor has it purposefully established minimum contacts with the forum state. *See id.* In the Court's view, the purposeful availment requirement cannot be satisfied by the mere assumption of unknown

---

**23.** The record reveals that in December, 1959 the mill and all related equipment were sold by Calera to Machinery Center, Inc. In April, 1960 all of the physical assets at the mine, exclusive of the mill and mining claims, were also sold to Machinery Center. In December, 1960 Misco transferred all interests in the mining claims to Howe Sound pursuant to its dissolution. In May, 1962 Misco purported to quitclaim all mining interests to Howard Sims and Jessie Shine who in turn leased the property to Roger Pierce and Machinery Center. Finally, in 1967, Howmet (Howe Sound changed its name to Howmet in 1965) quitclaimed all interest in the mine to Roger Pierce.

**24.** The Court recognizes the pitfalls and potential abuses inherent in not strictly holding a corporate entity to obligations it might have assumed, known or unknown. However, the Court is of the opinion that the unique facts and circumstances of this case do not justify asserting personal jurisdiction over plaintiffs in this case.

liabilities unattached to assets that would give the defendant fair warning of the likelihood of being haled into court in the forum in which those assets were located. *See Simmers.* This is not a case where a successor corporation has continued the business of a predecessor or obtained the assets or contractual rights that could be pursued in the forum's courts where the defendant would benefit from the benefits and protection of the forum law. To the contrary, the record suggests Pechiney may have unknowingly assumed 23 year old liabilities unattached from any of the forum related assets. In the Court's view, under the facts and circumstances of this case, Pechiney's contacts with the State of Idaho are too attenuated and fortuitous and the exercise of personal jurisdiction would violate due process. *Compare Inter–Americas Ins. Corp. v. Xycor Systems, Inc.,* 757 F.Supp. 1213 (D.Kan.1991) (assumption of secondary liability not mentioned in the assumption agreement was too attenuated and insufficient to establish jurisdiction where the defendant had not otherwise purposely availed itself of the privilege of doing business within the forum state). Accordingly, the Court concludes that Pechiney has not purposely established the requisite minimum contacts with the forum state and the first element of the due process analysis set forth in *Alexander v. Circus Circus Enterprises, Inc.,* 939 F.2d 847 (9th Cir.1991) has not been satisfied.

The exercise of personal jurisdiction also appears to be unreasonable under the unique circumstances of this case. In determining whether the assertion of jurisdiction is reasonable, the Ninth Circuit considers the following factors: the extent of purposeful interjection, the burden on the defendant to defend the suit in the chosen forum, the extent of conflict with the sovereignty of the defendant's state, the forum state's interest in the dispute, the most efficient forum for judicial resolution of the dispute, the importance of the chosen forum to plaintiff's interest in convenient and effective relief, and the existence of an alternative forum. *Id.* at 854. These seven factors are used to determine whether "under the totality of the circumstances the defendant could reasonably anticipate being called upon to present a defense

in a distant forum." *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 840 (9th Cir.1986).

The record demonstrates that Pechiney has not purposefully interjected itself into the forum state. To the contrary, it would appear that the assumption of any residual liability related to the Blackbird Mine was unintended.

Although the historical burden of litigating in a distant forum has been reduced, *see Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), it would be burdensome for Pechiney to litigate this issue in a forum with which it has no contacts. State sovereignty does not appear to be a significant factor in this case. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

Although Idaho clearly has an interest in seeing the mine site cleaned up, the state's decision not to name Pechiney as a defendant in this action lessens the significance of the state's interest as it relates to the assertion of personal jurisdiction over Pechiney. This is especially the case given Pechiney's attenuated contacts with the Blackbird Mine.

The most efficient judicial resolution of the controversy is probably in the United States District Court in New York where a declaratory judgment action regarding Alumax and Pechiney's respective duties relating to the instant action is presently pending. Although plaintiffs have an interest in litigating the issue of Pechiney's liability in Idaho where they are already defendants in the State of Idaho's action, it is clear that another forum for plaintiffs exists in Connecticut, Pechiney's principle place of business.

After reviewing these factors, the Court likewise concludes that Pechiney could not reasonably anticipate being called upon to present a defense to this action in Idaho. *See Taubler v. Giraud,* 655 F.2d 991, 993 (9th Cir.1981), and the exercise of personal jurisdiction would be unreasonable.

Accordingly, the Court finds that the assertion of personal jurisdiction over Pechiney would be improper under the unique circum-

stances of the case and therefore, service of process was improper.

Therefore, the Court recommends to the district court that Pechiney's Motion to Dismiss be granted.

## VII.

### Recommendation

The Court recommends to the District Court as follows:

1. That Alumet's Motion to Dismiss, filed February 4, 1991 (Docket No. 161), be granted in part and denied in part. With respect to Alumet Corporation, the motion should be denied; with respect to Alumet Holding Corporation, the motion should be granted.

2. That Alumax's Motion to Dismiss, filed February 4, 1991 (Docket No. 161), be granted.

3. That Pechiney's Motion to Dismiss, filed February 4, 1991 (Docket No. 166), be granted.

Written objections to this Report and Recommendation must be filed within ten (10) days pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(d) or as a result that party may waive the right to raise objections in the Ninth Circuit Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *McCall v. Andrus*, 628 F.2d 1185 (9th Cir.1980), *cert. denied* 450 U.S. 996, 101 S.Ct. 1700, 68 L.Ed.2d 197 (1981); *Britt v. Simi Valley Unified School Dist.*, 708 F.2d 452 (9th Cir.1983).

SO ORDERED.

DATED: September 28, 1992.